RICHARD DARCY & others *vs.* GEORGE H. KELLEY & others.

Bristol.    October 30, 1890. — April 1, 1891.

Present: FIELD, C. J., W. ALLEN, C. ALLEN, & KNOWLTON, JJ.

*Will — Public Charity — Cy Pres — Framing of Scheme by the Court — Former Decree.*

A testator by his will devised his entire estate to a parish priest, in trust to pay it over to " the Sisters of Charity, for the purpose of a relief fund for the poor; and the same shall be devoted and appropriated in the first place to the aid of my poor relatives, if any such there be, according to the discretion of the Sisters of Charity; afterwards the said property and estate, and the proceeds and income thereof, or such part of either or both as may be deemed expedient by the said Sisters of Charity, shall be, at such times and in such sums as they shall deem proper, bestowed upon proper objects of charity, in their discretion." There was .no such order as the Sisters of Charity. *Held*, that the gift constituted a public charity; and that the court would frame a scheme to administer the trust.

A will, in establishing a trust as " a relief fund for the poor," provided that preference should be given to the testator's "poor relatives, if any such there be." A decree was made in equity in reference to the trust, that payments should be made from the fund to a sister and a niece, the next of kin of the testator, who were poor and in needy circumstances, and that further payments should be made them from time to time according to their need. *Held*, that the decree did not conclusively determine that such relatives were the only relatives who were to receive any benefit from the trust, or that, as private beneficiaries, they were entitled to the whole fund; but that a later decree might be entered such as the provisions of the will might require.

BILL IN EQUITY, filed on December 20, 1889, by the children of Elizabeth Darcy, against George H. Kelley, trustee under the will of Patrick Lane, and against Mary Ann Nolan, to secure a portion of the testator's estate.  The Attorney General was made a party defendant, and appeared, but did not care to be

heard. The case was reserved by *Knowlton,* J. for the consideration of the full court, and was as follows.

Patrick Lane, a resident of Fall River, died on February 22, 1873, leaving a widow, and a sister, Mrs. Darcy, and her children, the plaintiffs, and a niece, Mrs. Nolan, and her three children, as his only relatives. His will, which was duly admitted to probate on April 4, 1873, omitting parts merely formal, was as follows:

"Second. I give, devise, and bequeath to my beloved wife, Maria Lane, the use, income, and improvement of all my property and estate, real and personal, of whatever name or nature the same may be and wherever the same may be found, during her lifetime, providing she shall remain my widow.

"Third. Upon the decease or marriage of my wife, I give and bequeath and devise all my said property and estate to the parish priest who may then be in charge of the Catholic church in Fall River (now St. Mary's), in trust to be disposed of as follows, to wit: the said parish priest shall put the said property and estate, or the proceeds thereof, into the hands of the Sisters of Charity, for the purpose of a relief fund for the poor; and the same shall be devoted and appropriated in the first place to the aid of my poor relatives, if any such there be, according to the discretion of the Sisters of Charity; afterwards, the said property and estate, and the proceeds and income thereof, or such part of either or both as may be deemed expedient by the said Sisters of Charity, shall be, at such times and in such sums as they shall deem proper, bestowed upon proper objects of charity, in their discretion.

"Fourth. I hereby constitute and appoint the parish priest (for the time being) of St. Mary's Catholic church in Fall River to be executor of this my last will and testament, hereby revoking all other and former wills by me at any time heretofore made."

Rev. Edward Murphy, as such priest, was duly appointed executor; and an inventory was returned of real estate worth $4,100, and personal estate worth upwards of $1,500. The widow of Patrick Lane died in 1874, and thereafter, on December 22, 1881, Mrs. Darcy filed a bill in equity in this court, and Mrs. Nolan was joined as party plaintiff, against Murphy, alleging that there was no such organization as the Sisters of Charity, and that they were poor and in needy circumstances, and were of the poor

relatives indicated by the testator to share in his bounty; and praying that the contemplated trust be declared void, and the plaintiffs decreed to be entitled as heirs at law of the testator to the whole of the estate ; or, if the trust was not void, that a trustee be appointed and directed to pay over to them such portions of the estate and income as they might be entitled to. That case was sent to a master, to hear the parties and report respecting the condition of the plaintiffs and of the property, and as to the doings of Murphy in regard to the same; and the master subsequently reported, on April 23, 1883, that beyond the inventory no account had ever been rendered, and no settlement had been made of the estate; that Murphy had never been appointed trustee by the Probate Court, but had been so appointed by this court; that he had managed the estate and collected the income from April 4, 1873, to February 10, 1883, amounting, after deducting expenses, to $2,470.78; that Mrs. Darcy and Mrs. Nolan were the sole surviving relatives of the testator, and were both poor and in needy circumstances, and had been since the death of the widow; and that Mrs. Darcy was aged and infirm, and was supported by the charity of a son in law. On April 26, 1883, upon the coming in of the master's report, a decree was entered that " Murphy, as trustee, pay to the aforesaid Elizabeth Darcy the sum of five hundred dollars forth-with, and to the said Mary Ann Nolan the further sum of three hundred dollars forthwith, and that he be allowed to credit himself with the same as made by him as trustee as aforesaid; and that he pay to the said Darcy and Nolan respectively from time to time further sums, according to their needs and in his discretion, with liberty to either or both to apply to this court, or justice thereof, in term time or vacation, for other and further relief, or to compel the said Murphy or his successor in said trust to comply with the terms of this decree, and to carry out the provisions of the will."

Murphy continued to manage the trust estate and to collect the income until his death, in September, 1887 ; and in March, 1888, the defendant Kelley was appointed trustee of the estate, and received from Murphy, as the only property thereof, real estate inventoried at $3,600, and proceeded to manage the same and to collect the income. The bill alleged that Elizabeth Darcy died on August 13, 1883, leaving two sons and three

daughters, who were the plaintiffs; and that all of them were " in needy and destitute circumstances, although they and the said Nolan never have been, and are not, subjects of public charity." The bill further alleged, that, according to the true construction of said will and the facts above set forth, either the contemplated trust is void for uncertainty, for want of proper parties to take and execute the same, or that the plaintiffs are entitled to share in said property as heirs at law of the testator, or that they are entitled to share in said property, estate, or income, and have a portion thereof as among the beneficiaries intended and described by the testator in the will.

The bill also alleged, and the answer of the defendant Kelley admitted, that no such organization existed as the Sisters of Charity.

*S. M. Thomas*, for the plaintiffs.

*H. K. Braley*, for the defendants.

KNOWLTON, J. It is not expressly stated in the bill that the plaintiffs' mother, Elizabeth Darcy, died intestate, and that they succeeded to her rights in real estate. But they allege that, if the trust is void for uncertainty, or for want of proper parties, they are entitled to share in the premises as heirs at law of Patrick Lane. This they could not do otherwise than as heirs at law of their mother, and perhaps it may fairly be inferred, on all the allegations of the bill and answers, that the plaintiffs succeeded to their mother's real estate, and that they are entitled to be heard on the question whether the real estate held by the trustee under the will of Patrick Lane passed to the testator's heirs at law. Their right to sue has not been questioned by the defendants.

The third clause of the will is as follows: " Upon the decease or marriage of my wife, I give and bequeath and devise all my said property and estate to the parish priest who may then be in charge of the Catholic church in Fall River (now St. Mary's), in trust to be disposed of as follows, to wit: the said parish priest shall put the said property and estate, or the proceeds thereof, into the hands of the Sisters of Charity, for the purpose of a relief fund for the poor; and the same shall be devoted and appropriated in the first place to the aid of my poor relatives, if any such there be, according to the discretion of the Sisters of Charity; afterwards, the said property and estate, and

the proceeds and income thereof, or such part of either or both as may be deemed expedient by the said Sisters of Charity, shall be, at such times and in such sums as they shall deem proper, bestowed upon proper objects of charity, in their discretion."

The greater part of the testator's property was real estate, and this is now held by the defendant Kelley, as trustee under this clause of the will. In interpreting the will, we must first endeavor to ascertain the intention of the testator, and then see whether it can be carried out. After the death of the widow, the property was to be used as " a relief fund for the poor," and was to be appropriated, in the first place, to the aid of his poor relatives, according to the discretion of the Sisters of Charity, and afterwards was to be bestowed, in such sums as they should deem proper, upon proper objects of charity. Did the testator intend this as a private trust for the benefit of his poor relatives living at the time of his death, or at the time of the death of his widow, or did he intend to establish a public charity? If it is a private trust, his poor relatives, inasmuch as there has been no selection by the trustees mentioned in the will, are those who would take under the statute of distributions, although the trustees in making a selection might have chosen from a larger class. *Brown* v. *Higgs,* 4 Ves. 708, 719, notes 4, 5, 6. *Longmore* v. *Broom,* 7 Ves. 124. *Cole* v. *Wade,* 16 Ves. 27. *Supple* v. *Lowson,* Ambl. 729. *Salusbury* v. *Denton,* 3 Kay & Johns. 529, 539. But it seems evident that the testator did not intend to limit his bounty to so small a class. This property is given " for the purpose of a relief fund for the poor." This broad statement completely describes the general nature of the gift. It includes all the poor, and opens to the discretion of the trustees a field as broad as the world. He then provides more specifically that a preference shall be given to his poor relatives, " if any such there be," meaning such persons as may at any time in the future, while the trust continues, be related to him by blood. The charity is obviously of a public nature, and it is in its terms within the familiar definitions of a public charity. *Saltonstall* v. *Sanders,* 11 Allen, 446. *Jackson* v. *Phillips,* 14 Allen, 539. *White* v. *Ditson,* 140 Mass. 351. *Bullard* v. *Chandler,* 149 Mass. 532.

It is alleged and admitted that there was no such organization as the Sisters of Charity, and there is no one else designated in the will to exercise discretion in the administration of the trust,

or to determine the mode of its administration.   But it has been decided in this Commonwealth that a devisé of this kind is a good charitable trust, and that the court will not permit it to fail for want of a trustee, but will take upon itself its administration by devising a scheme and appointing instrumentalities for its management.   *Fellows* v. *Miner*, 119 Mass. 541.   *Minot* v. *Baker*, 147 Mass. 348, and cases cited.   *Bullard* v. *Chandler*, 149 Mass. 532.

In such a case the court will appoint a master to investigate the facts, and report a plan to carry out the general purpose of the testator, as nearly as possible in the mode originally contemplated, and will make such a decree on the whole case as will establish the trust, and make it effectual in the best way.

It is contended by the plaintiffs in the present case, that the decree entered in a former suit in reference to this trust conclusively determines that the testator's heirs at law are the only relatives who can receive any benefit from the trust, and that, as private beneficiaries, they are entitled to the whole fund.   It does not very clearly appear on what ground the court proceeded in making that decree, and we are not inclined to give it effect as settling anything beyond the right of Elizabeth Darcy and Mary Ann Nolan to receive the sums which were awarded to them respectively at that time, and their right afterwards to be considered as members of the class to be benefited.   A master was appointed to hear the parties and report all the facts as to their condition and the condition of the property, and the doings of the trustee in regard to it; and it appeared by his report that both of them were poor and in needy circumstances, and that Elizabeth Darcy was being supported by the charity of a son in law.   Upon the facts found, it was proper that each of them should receive a part of the proceeds of the fund, and the decree, although not in accordance with the usual practice of the court in dealing with a public charity, is not necessarily inconsistent with a finding that this was a public charity, and that the court, on the facts reported, would make an order for a payment to each of two persons of the preferred class to be benefited, and for payments by the trustee from time to time of "further sums, according to their needs and in his discretion, with liberty to either or both to apply to this court, or justice thereof, in term time or vacation, for other and further relief, or to

compel the said Murphy or his successor in said trust to comply with the terms of this decree, and to carry out the provisions of the will." It may be that, on the particular facts shown, this was intended as a partial distribution of the funds of a public charity, leaving the further administration of the trust for a future time. At all events, on those facts, without reference to the form of the decree, the payments made were in accordance with the will of the testator, and if it was intended to treat the trust as private, that does not so clearly appear as to prevent the court from making such a further decree as the provisions of the will require.

The case must be referred to a master, to report the facts and a scheme for the administration of the trust. *So ordered.*