**POWERS et al. v. FIRST NAT. BANK OF CORSICANA, TEX., et al.**

No. 2161.

Court of Civil Appeals of Texas. Waco.

Feb. 22, 1940.

Rehearing Denied March 14, 1940.

Cantey, Hanger, McMahon, McKnight & Johnson, of Fort Worth, and Burns & Hadsell, of Niles, Mich., for appellants.

Richard & A. P. Mays, Taylor & McWilliams, J. S. Callicutt, Chris L. Knox, and Lawrence Treadwell, all of Corsicana, and Watkins & Mays and Ross B. Lea, all of Dallas, for appellees.

ALEXANDER, Justice.

Mrs. Bessie I. Hofstetter bequeathed all of her property, consisting of approximately a half million dollars, to The First National Bank of Corsicana, in trust for certain charitable purposes. Her heirs are contesting the will on the grounds (1) that it is too indefinite as to the charitable objects as well as the beneficiaries to be aided thereby, and (2) because it permits the trustee to expend the funds for private as well as charitable purposes and therefore violates the rule against perpetuities. The trial court sustained the validity of the will and the heirs have appealed.

The material portions of the will are as follows:

"Fourth: After the payment of debts and expenses enumerated in items two and three next above, and the expense of probating this will, I hereby will and bequeath and devise unto The First National Bank of Corsicana, Texas, a banking corporation organized under the Federal Banking Act of the United States of America, in trust for the purposes hereinafter stipulated, all of the property of which I may die seized and possessed including real, personal and mixed property, and property of every kind and description, whether in my possession or held in trust for me; and it is my will and my desire that the Trustee aforesaid, shall have the entire management and control of all of said property; * * * .

"Fifth: The Trustee, aforesaid, and its successors shall hold said property hereby devised and bequeathed to it in trust as a permanent charity fund and shall invest and reinvest same * * *

"Sixth: The net income of the public charity fund herein and hereby vested in the Trustee herein shall be expended by the Trustee for worthy objects of charity, including the support of the Christian religion as hereinafter indicated. The charity so dispensed in the relief of poverty shall be without regard to race, color, sex or religious belief, and shall be distributed from time to time in the judgment and discretion of the Trustee; the objects of such charity to be selected by the Trustee. The said Trustee is further authorized and directed to pay out of the income of said trust a reasonable amount annually for the support of the Presbyterian Church of the United States of America at Corsicana, Texas, commonly known as the Third Avenue Presbyterian Church, and also to pay

annually a reasonable amount to the Board of Trustees of Reynold's orphanage at Dallas, Dallas County, Texas, said orphanage being conducted under the auspices of the Presbyterian Church of the United States of America. And if in the judgment of the Trustee the income from said Trust shall warrant, said Trustee may make contributions from such income to the above named church and orphanage for permanent improvements.

"The Trustee shall have the power and authority and is hereby directed, out of the income only, if in the judgment of the Trustee the income of the Trust is sufficient after the contributions above provided for, to make loans to ambitious and worthy boys and girls, who are financially unable to secure an education and would otherwise be deprived thereof. Such loans shall be in amounts and upon terms and conditions, and to such boys and girls that may be determined worthy thereof in the discretion of the Trustee, but without regard to residence of the recipients."

█ Before beginning a discussion of the specific questions raised by the appeal, it should be noted in the outset that charitable gifts and trusts are favorites of the courts. Voluntary gifts of this nature by those in comfortable circumstances for the relief of the poverty and distress of those less fortunate, or for bringing their minds and hearts under the influence of education and religion, or relieving their bodies of disease, suffering or restraint, evidence man's finest qualities. Moreover, they tend to relieve the government of a part of its responsibility to a portion of its citizens and thus reduce the general tax burden on the public. They are therefore to be encouraged rather than discouraged. Consequently, in passing on the validity of such gifts, every reasonable intendment, consistent with the terms and purposes of the gift, will be made, and every presumption consistent with the language used will be indulged, and the trust will be upheld and declared to be valid where it is possible to do so consistent with the established principles of the law. Of two possible constructions, the court will adopt that one which operates to sustain the trust or gift. 14 C.J.S., Charities, page 427, § 6; 10 Amer.Jur. 657, sec. 102; Perry on Trusts & Trustees, p. 1200, sec. 709; Bogert on Trusts & Trustees, Vol. 2, p. 1129, § 369; 9 Tex.Jur. 55.

With the foregoing rules in mind, we take up for consideration the construction to be placed on the will in question. It will be noted that in the fourth paragraph of the instrument the property is willed to the bank "for the purposes hereinafter stipulated," and by the fifth paragraph the trustee and its successors is directed to hold the property in trust as "a permanent charity fund." In the sixth paragraph it is provided: "The net income of the public charity fund herein and hereby vested in the Trustee herein shall be expended by the Trustee for worthy objects of charity, including the support of the Christian religion as hereinafter indicated. The charity so dispensed in the relief of poverty shall be without regard to race, color, sex or religious belief, and shall be distributed from time to time in the judgment and discretion of the Trustee; the objects of such charity to be selected by the Trustee." We think the provision of the will, as contained in the fifth paragraph thereof, directing the trustee to hold the property "as a permanent charity fund," and the provision as contained in the sixth paragraph, authorizing the trustee to expend the "public charity fund" "for worthy objects of charity," make it clear that the funds are to be expended for charitable purposes only and not for private purposes. No other conclusion can be drawn from the will as a whole than that the testatrix intended to set up a fund for use for charitable purposes only.

██ The provision contained in paragraph 6 to the effect that the fund "shall be expended by the trustee for worthy objects of charity, including the support of the Christian religion as hereinafter indicated," does not contain any comma after the word "religion" and from this it is argued by appellants that the modifying clause "as hereinafter indicated" constitutes a limitation only on the authority of the trustee to use the fund for the support of the Christian religion and that as a consequence the trustee is free to select any other charitable objects to be beneficiaries of the fund. The will is, however, susceptible to the construction that the phrase "as hereinafter indicated" was intended as a limitation on "the worthy objects of charity," to be selected as beneficiaries, and if so construed, then by reading the remainder of the will, we find that the testatrix has limited the trustee in

the expenditure of the trust fund to four general charitable objects: (1) the relief of poverty, the objects to be selected by the trustee; (2) the support of the Presbyterian Church at Corsicana, with possible contributions for permanent improvements; (3) the support of Reynold's Orphanage, with possible contributions for permanent improvements; and (4) loans to ambitious, worthy boys and girls to be selected by the trustee, otherwise unable to secure an education. Since the language used is susceptible of this latter construction, it is our duty to so construe it, for, as above stated, it is a well established rule that where a will is susceptible of two constructions, one of which would render it valid and the other invalid, that construction should be adopted which would render it valid in preference to one which would nullify it. 44 Tex.Jur. 716; Neely v. Brogden, Tex.Com.App., 239 S.W. 192, par. 5; Brooker v. Brooker, Tex.Civ.App., 76 S.W.2d 180.

Appellants assert that even though the will requires the trustee to expend the funds for "worthy objects of charity," there is nothing therein that limits the use of the funds for "public charity," and for that reason the trustee could expend the funds for purely "private charity," and therefore the trust is invalid. In the first place, we think it is hardly correct to classify charity as being "private." If property is conveyed in trust for the benefit of certain definite individuals or individuals capable of being definitely ascertained, it is a private trust; or, if property is conveyed in trust for noncharitable objects, then the trust is not a public one. On the other hand, if property is conveyed in trust for an indefinite class for any charitable purpose, it is a charitable trust, and if the funds are expended in the accomplishment of any of the objects set forth in the conveyance, the expenditure is for charity in compliance with the public trust. If the funds should be expended for any other purpose, it would be in violation of the trust. In other words, all purely charitable trusts are public trusts. Vol. 2 Bogert on Trusts, sec. 398. The use of the term "public charity" seems to have crept into the decisions through legislative enactments exempting from taxation institutions engaged in "purely public charity." Troutman v. De Boissiere, 66 Kan. 1, 71 P. 286 294, 300 (dissenting opinion). The term

as used in such legislation was doubtless so used for the purpose of requiring exclusive charitable use and not for the purpose of recognizing a trust for "private charity." In the second place, the will in this case expressly refers to the fund so conveyed to the trustee as "public charity fund," and thereby makes it clear that it is to be used for a public and not a private purpose. If the objects set out in the will are charitable, a matter which will be later discussed, then and in that event, if the trustee expends the fund in keeping with the trust, there need be no fear that the funds will be used for private purposes or for "private charity," as that term is apparently used by appellants.

A public charity or trust is one for the benefit of the public at large or some substantial and indefinite portion of it. Charitable purposes include (a) the relief of poverty; (b) the advancement of education; (c) the advancement of religion; (d) the promotion of health; (e) governmental or municipal purposes; and (f) other purposes the accomplishment of which is beneficial to the community. Restatement of the Law of Trusts, p. 1140, sec. 368; 10 Amer.Jur. 621; 14 C.J.S., Charities, page 439, § 12; Scott on Trusts, 1972; Perry on Trusts & Trustees, Vol. 2, p. 1184. All of the charitable objects set out in the will here under consideration come within these general purposes.

The bequest for the relief of poverty reads as follows: "The charities so dispensed in the relief of poverty shall be without regard to race, color, sex or religious belief, and shall be distributed from time to time in the judgment and discretion of the trustee; the objects of such charities to be selected by the trustee."

Appellants assert that this bequest is too general and indefinite both as to the charitable objects to be served as well as the beneficiaries to be aided thereby; that it wholly fails to establish a means of selection for either the charity itself or the beneficiaries thereof, and vests in the trustee a personal discretion in this respect; and that in the event of the inability or refusal of the trustee to properly carry out the trust, a court of equity could not supervise the administration thereof because it would be unable to discern the exact intention of the testatrix as to the charitable objects to be accomplished, the particular beneficiaries to be aided, and the amount of aid to be extended to each of them. In

other words, the court would be without any "yardstick" by which the particular class to be aided should be selected or the scheme to be employed in aiding them, or the will of the testatrix otherwise ascertained, and if a court of equity should undertake to carry out such a trust, it would necessarily have to substitute the will of the court for the will of the testatrix. We do not think that this contention is sound. Of course, if the courts approach the subject with an unsympathetic attitude, looking for some excuse to avoid the bequest of the testatrix, doubtless many such excuses might be found. But the subject should not be so approached. After all, it was the testatrix' property to do with as she pleased, and if she saw fit to risk the administration of the trust to the uncertainties necessarily incident thereto, the court should suffer no unusual distress on this ground. Bequests of this kind are for the general good and should be looked upon with favor and carried out if possible. Harrington v. Pier, 105 Wis. 485, 82 N.W. 345, 346, 50 L.R.A. 307, 76 Am.St.Rep. 924; Troutman v. De Boissiere, 66 Kan. 1, 71 P. 286, 296 (dissenting opinion). Courts should not allow themselves to become static nor so hedged about with barriers of their own making, as to render themselves incapable of performing the functions for which they were created and are maintained. It was this confession of impotency on the part of the common law courts that brought about the creation of courts of equity to meet practical situations. It was this same attitude on the part of the courts of the states of New York, Michigan, Minnesota, Maryland, Virginia, West Virginia and Wisconsin toward charitable trusts that caused the legislatures of those states to enact statutes compelling the courts to recognize and administer such trusts. Scott on Trusts, Vol. 3, p. 1925, sec. 348.3.

The portion of the will last quoted, when fairly construed, directs that the funds be used for the relief of poverty, "the objects of such charities to be selected by the trustee." By this we think it is meant that the trustee is to select the channel or devise the scheme through which the funds are to be applied for the relief of poverty, as well as the individuals to be aided thereby. Bequests of this general nature for the relief of poverty, in which discretion was vested in the trustee to select the method to be followed or the scheme to be employed in the accomplishment of the purpose as well as the particular beneficiaries to be aided have been sustained by numerous courts and text writers. 14 C.J.S. Charities, page 500, § 47; 10 Amer.Jur. 621, 634; Perry on Trusts & Trustees, Vol. 2, p. 1183, sec. 698; Scott on Trusts, p. 1978, sec. 369; Pomeroy's Equity Jurisprudence, 4th Ed., Vol. 3, p. 2287, sec. 1025; Bogert on Trusts & Trustees, Vol. 2, p. 1138 sec. 371; Palmer v. Oiler, 102 Ohio St. 271, 131 N.E. 362; Darcy v. Kelley, 153 Mass. 433, 26 N.E. 1110; Wood v. Paine, C.C., 66 F. 807; Scudder v. Security Trust Co., 238 Mich. 318, 213 N.W. 131; Miller v. Teachout, 24 Ohio St. 525; See Note 14 L.R.A.,N.S., 49-155. Scott on Trusts, Vol. 3, sec. 369.1, reads as follows: "In creating a trust for the relief of poverty, the settlor may specify the manner in which the poor are to be assisted. A trust for the relief of poverty, however, is valid as a charitable trust although no method of relief is specified. Thus a trust 'for the poor,' or 'to aid the poor,' or to 'help the needy,' or 'for the relief of poverty' is charitable. In such cases if it appears that the trustees were to have discretion as to the manner of assisting the poor, they may adopt any reasonable method for effectuating this purpose. If this discretion is not conferred upon the trustees, the court will frame a scheme for the application of the property to the purpose."

■ The fact that the testatrix has vested in the trustee a discretion to be exercised in selecting the scheme to be employed in expending the money for the relief of poverty and in selecting the beneficiaries to be aided does not invalidate the bequest. In discussing the subject, Bogert on Trusts & Trustees, Vol. 2, p. 1117, sec. 366, says: "It has occasionally been held that a charitable trust is too vague for enforcement, unless the settlor expressly gives the trustees power to select the cestuis and expressly prescribes the manner of administering the trust in detail. Most decisions manifest a much more liberal attitude toward the attempted charity. They imply an authorization to the trustees to choose the beneficiaries and to decide upon plans for carrying out the settlor's benevolence. They hold that a charitable trust, with authority in the trustee to fix a scheme for trust execution, is sufficiently certain to enable the court to enforce it. Chancery can merely order the trustee to enter upon the administration of the trust. It can supervise his work from time to

time and give him advice. If he can frame no scheme for bringing to pass the stated charitable results, the court may remove him and appoint a more efficient trustee, or may refer the problem to a master for the invention of a plan in a jurisdiction where the cy pres power exists."

On page 1139 of the same volume, the author says:

"Patently a trust for charity in general is extremely broad. The human beings to be aided may consist of all humanity, or any part of it in any country. There are thousands of acts which may be done which would be declared 'charitable' by a court of equity. Does the extremely wide choice and broad discretion vested in the trustee create a vice in the trust which makes it impossible or undesirable of enforcement by the court?

"It is believed that there is no objectionable uncertainty about such a general charitable trust. The trustee of it is under a duty to select any one of the hundreds or thousands of means open to him to benefit mankind in such a way as to bring about a charitable result. The court can order him to make such a selection. The decisions of the courts in England and in this country can be studied and will guide the trustee to a decision as to what is and what is not charitable. When he accounts to the court and states what he has done with the money, chancery can decide according to well-fixed standards whether the act was in fact a charitable act or not, and so whether there has been a performance or breach of the trust. There need be no doubt or ambiguity in the trustee's mind as to his duty, if he studies the precedents or takes good legal advice. If he will not perform the trust, the court does not have to perform it for him and so choose between contending charities. It can merely remove the recusant trustee and appoint another." See also Restatement of Law of Trusts, p. 1193, sec. 397(d)

■■ While the will vests in the trustee the discretion of framing the scheme by which the funds are to be applied to the relief of poverty and of selecting the beneficiaries to be aided thereby, it does not appear that this power of selection was intended to be personal in the sense that the trust was to fail in the event the named trustee refused or was unable to carry out the trust. Restatement of the Law of Trusts, sec. 397, comment (c), lists the following circumstances to be considered· in determining whether the power of selection provided for in the trust agreement was intended to be limited to the trustee named therein: "(1) whether and to what extent the intended charitable purposes are indicated by the terms of the trust; (2) whether the principal is to be immediately applied or whether the income is to be applied for an indefinite period; (3) whether the trustee was selected because of his peculiar knowledge of the wishes of the settlor; (4) whether the trustee is an individual or a corporation; (5) the relation between the settlor and the trustee; (6) whether by the terms of the trust provision is made for the selection of successor trustees." If these tests be applied to the will under consideration, it will clearly appear that the power of selection was not intended to be limited to the original trustee named in the will. Here, the trustee named in the will is a corporation and not an individual. The will vests the title to the property in the trustee and its "successors" as "a permanent charity fund" with authority to use the income only for the objects named in the will.

■ The fact that the beneficiaries to be aided are indefinite does not mitigate against but is essential to a public trust. "When the class which is to receive the benefit of a charitable trust has been fixed, vagueness and uncertainty as to the individuals and numbers composing that class are not only permitted, but are absolutely essential elements in the creation of a valid charitable trust. It has been truly said that charity begins where certainty in beneficiaries ends, for it is the number and uncertainty of the objects, and not the mode of relieving them, which forms the essential element of a charity. Whenever the beneficiary is designated by name, he has a right which he can exercise, and his merit alone is to be considered; the bequest is private, and not public, and ceases to have the peculiar merit of a charity." 10 Amer.Jur. 605, sec. 28. See, also, Scott on Trusts, p. 2018, sec. 375; Pomeroy's Equity Jurisprudence, 4th Ed., p. 2287, sec. 1025; Bogert on Trusts, 1093, sec. 362; 14 C.J.S., Charities, page 474, § 39; Restatement of the Law of Trusts, p. 1165, sec. 375.

■ Much stress is placed on the fact that the testatrix did not fix any territorial limits from which the beneficiaries should be selected. This, however, was not essential. The testatrix was not so limited in her views. She desired the whole world

to have the benefit of her charity and vested in the trustee the discretion of selecting therefrom the individuals to be so benefited. The trustee could select them as well from a large territory as it could from a more limited field. It is true that the trustee will not be able to give aid to the poor of the whole world and for that reason will likely select beneficiaries from nearby points and not from remote places, but, nevertheless, the testatrix will have accomplished her purpose of relieving the poverty of the world as far as is possible for her limited means to do so.

 Appellants cite many cases in support of their contention that the bequest for the relief of poverty is too general and indefinite as to the objects to be subserved and the beneficiaries to be aided. In the case of Allred v. Beggs, 125 Tex. 584, 84 S.W.2d 223, 228, our Supreme Court said: "If a testator leaves his estate to charity generally, but authorizes his executor to determine for what charitable purposes it shall be used, and to select the beneficiaries thereof, and the will contains no other definite manner of selection, the trust is a personal one, and a court of equity does not have jurisdiction to determine the purpose or select beneficiaries." This statement is not controlling in the case at bar for two reasons. In the first place, the will there under consideration did not require the trustee to use the funds exclusively for charitable purposes but left it to the discretion of the trustee and the testator's sister as to whether the funds should be used for "charity or for any other purpose they may consider worthy." See 84 S.W.2d page 229 of the opinion. Therefore, the court did not have before it a will in which the testator had left his property exclusively for charity generally. There is quite a difference between a will that leaves funds exclusively for charitable purposes and one that leaves such funds for charity or other worthy objects. Scott on Trusts, Vol. 3, sec. 389.1. Consequently, the statement of the court above quoted was not necessary to a decision of that case. In the second place, the will here under consideration did not leave the funds for the relief of charity generally but designated certain specific charitable objects to be served. The cases of Tilden v. Green, 130 N.Y. 29, 28 N.E. 880, 14 L.R.A. 33, 27 Am.St.Rep. 487, and Read v. Williams, 125 N.Y. 560, 569, 26 N.E. 730, 21 Am.St.Rep.

748, cited by appellants, were decided at a time when charitable trusts were not recognized in the state of New York. It was in response to the holding of the court in Tilden v. Green, supra, that the legislature enacted a statute requiring the courts of that state to recognize charitable trusts. Scott on Trusts, Vol. 3, pp. 1925–1927, sec. 348.3. Likewise, the holding of the Supreme Court of Maryland in Gambel v. Trippe, 75 Md. 252, 23 A. 461, 15 L.R.A. 235, 32 Am.St.Rep. 388, was followed by legislation legalizing trusts in that state. Id. In the case of Hadley v. Forsee, 203 Mo. 418, 101 S.W. 59, 60, 14 L.R.A., N.S., 49, the property was willed to testator's wife on condition that the balance, after certain dispositions, "will be given to advance the cause of religion, and promote the cause of charity, in such manner as my * * * wife may think will be most conducive to the carrying out of my wishes." The court in that case correctly pointed out that the testator had not willed the remainder of his estate to anyone for any purpose but had left its subsequent disposition to his wife. Likewise, in the case of Johnson v. Johnson, 92 Tenn. 559, 23 S.W. 114, 22 L.R.A. 179, 36 Am.St.Rep. 104, the will authorized the trustee to appropriate the income from the property in any way that he might elect. There was in that case no designated object nor class of beneficiaries and no limitation on the purpose for which the property could be used. The same is true of most of the other cases cited and relied on by appellants. In this connection, it will be noted that these cases come from states in which, according to Pomeroy, charitable trusts were not then recognized at all or where they now exist only under a somewhat modified and restricted form. Pomeroy's Equity Jurisprudence, 4th Ed., Vol. 3, sec. 1029, p. 2314. Under the same author's classification, Texas is placed among the states exercising the most liberal view toward charitable trusts. Id. See, also, Bogert on Trusts & Trustees, Vol. 2, sec. 322, p. 1020. The adjudicated cases in Texas seem to bear out Mr. Pomeroy's classification in this respect. See Bell County v. Alexander, 22 Tex. 350, 351, 73 Am.Dec. 268; Paschal v. Acklin, 27 Tex. 173, 174; Scott v. Logan, 122 Tex. 636, 64 S.W.2d 141; Inglish v. Johnson, 42 Tex.Civ.App. 118, 95 S.W. 558; 9 Tex.Jur. 63; Banner v. Rolf, 43 Tex.Civ.App. 88, 94 S.W. 1125; Gidley v.

Lovenberg, 35 Tex.Civ.App. 203, 79 S.W. 831. We hold that the will here under consideration is sufficiently definite in this respect.

Appellants insist that the bequest in favor of Reynold's Orphanage is invalid because, even though the undisputed evidence shows that the orphanage is operated without profit and supported exclusively by contributions from the Presbyterian Church and extends its benefits to needy orphan children of all creeds, yet since, according to the evidence, the board of trustees of the institution may, if it sees fit, limit the right of entrance thereto to children of Presbyterian parentage only, the bequest is, for that reason, not a public charity. Appellants cite and rely on the case of Allred v. Beggs, 125 Tex. 584, 84 S.W.2d 223, 227, wherein Associate Justice Critz, in speaking for our Supreme Court, said: "A charity for the orphan children of a state is a public charity, but a charity for the orphan children of deceased Masons, Odd Fellows, Baptists, Catholics, etc., of a state is not a public charity. Philadelphia v. Masonic Home, 160 Pa. 572, 28 A. 954, 23 L.R.A. 545, 40 Am.St.Rep. 736; Troutman v. De Boissiere, etc., 66 Kan. 1, 71 P. 286." We have carefully considered that case and have reached the conclusion that the statement just quoted was not necessary to a decision thereof. In that case the testator had not willed his property to anyone or placed it in trust for any purpose. The question of whether a charity for the orphan children of deceased members of any particular church or other organization was a public charity was not before the court. For that reason, it is possible that neither Associate Justice Critz, nor the court as a whole, gave their usual and customarily careful consideration to that particular part of the opinion. Only two cases were cited in support of its holding. In the first one, City of Philadelphia v. Masonic Home, supra, the issue was not whether a trust for the maintenance of an orphanage was valid as a public trust, but whether a home maintained for aged Masons was exempt from taxation as a public charity. The majority opinion held that the property was not exempt from taxation because the benefits of the home were limited to Free Masons. There was a strong dissenting opinion in which numerous cases to the contrary were cited. Our own Supreme Court, in the case of City of Houston v. Scottish Rite Benevolent Association, 111 Tex. 191, 230 S.W. 978, speaking through Associate Justice Greenwood, cited with approval the dissenting opinion in the case just referred to. In the other case, Troutman v. De Boissiere, supra, the Supreme Court of Kansas, by a four to three opinion, held that a bequest to a trustee for the maintenance of a home for the children of deceased Odd Fellows was not a gift for the purposes of a public charity so as to take it out of the rule against perpetuities. In that case there were likewise strong dissenting opinions. The majority opinion in that case stands alone, except for the support which it received from Philadelphia v. Masonic Home, supra, which, as above stated, was expressly disapproved by our own Supreme Court in City of Houston v. Scottish Rite Benevolent Association, supra. Bogert, in his work on Trusts and Trustees, Vol. 2, sec. 363, at page 1106, questions the soundness of the holding of the majority opinion in the Troutman case, and says: "The decisions generally support trusts for a portion of the members of a lodge or society where charitable benefits are to be conferred and the recipients will derive advantages from the trust." Numerous decisions are cited in support of the text. Restatement of the Law of Trusts, p. 1162, sec. 375, says: "A trust for the relief of poverty or advancement of education or religion or promotion of health may be a charitable trust although the class is sufficiently narrow so that a trust for the general benefit of members of the class would not be a charitable trust. Thus, a trust for the general purposes of a fraternal organization which is not a charitable organization is not charitable. On the other hand, a trust for the relief of poor members of such an organization or for needy members of their families is charitable. Thus, a trust for the support of needy widows and orphans of members of the Masonic order or of a particular lodge of the Masonic order is charitable, as is also a trust to establish or maintain a home for needy members of the organization." It is not essential to its validity that the charity be universal. Its beneficiaries may be limited to the poor of a particular religious body, or to the needy of a particular fraternal order. To the extent that it thus relieves the distress of a particular class and keeps them out of the alms-house or off of the relief rolls, it relieves the general pub-

lic burden and is therefore of public benefit. As said by the Supreme Court of Kentucky in Widows' & Orphans' Home v. Commonwealth, 126 Ky. 386, 103 S.W. 354, 358, 16 L.R.A., N.S., 829: "What good purpose is subserved in attaching the word 'private' to the charity of Catholics for Catholics, Presbyterians for Presbyterians, Masons for Masons, or Odd Fellows for Odd Fellows? Are the poor and helpless of these various bodies and organizations any less worthy, or any less a part of the public, because they are also members of the particular church or society to which they belong? Are not all charitable institutions necessarily limited to the relief of only a small part of the destitute public? Can any one institution administer to the wants of all? And, if this be true, is it necessary to brand as 'private' a charity which, by its terms, marks out a particular part of the public field in which it is to be administered?"

Our own Supreme Court, we think, has definitely settled the question in this state by the use of the following language in City of Houston v. Scottish Rite Benev. Ass'n, 111 Tex. 191, 230 S.W. 978, 981, as follows:

"The contention is vigorously stressed that the association was not an 'institution of purely public charity,' because those to whom it extended aid were confined in the main to the voluntary members of the Masonic order and their relatives.

"In our opinion, the Legislature might reasonably conclude that an institution was one of 'purely public charity' where: First, it made no gain or profit; second, it accomplished ends wholly benevolent; and, third, it benefited persons, indefinite in numbers and in personalties, by preventing them, through absolute gratuity, from becoming burdens to society and to the state.

"Looking either to the purpose for which the Scottish Rite Benevolent Association was formed or to the philanthropies which it practiced, it seems to fulfill the requirements just specified for an institution of purely public charity. Charity need not be universal to be public. It is public when it affects all the people of a community or state, by assuming, to a material extent, that which otherwise might become the obligation or duty of the community or the state. The care of those unable to provide for themselves certainly may devolve on those of the same community or state. It is to lose sight of actual results not to see the public benefit in reasonable provision for the needs of large and indefinite groups of individuals, no matter what may have been the basis, if lawful, on which the groups were formed."

The opinions in numerous cases support the conclusion that a bequest for the relief of the poor or needy of a particular church, creed or fraternity is a valid charitable trust, even though the gift is limited to those of the particular class, so long as the number to be benefited thereby is indefinite. Masonic Education & Charity Trust v. Boston, 201 Mass. 320, 325, 87 N.E. 602; Norris v. Loomis, 215 Mass. 344, 345, 102 N.E. 419; Minns v. Billings, 183 Mass. 126, 129, 66 N.E. 593, 5 L.R.A., N.S., 686, 97 Am.St.Rep. 420; Grand Lodge v. Board of Review, 281 Ill. 480, 483, 117 N.E. 1016; State v. Packard, 35 N.D. 298, 160 N.W. 150, L.R.A.1917B, 710; Widows' & Orphans' Home v. Commonwealth, 126 Ky. 386, 103 S.W. 354, 16 L.R.A., N.S., 829, 842; Green v. Fidelity Trust Co., 134 Ky. 311, 120 S.W. 283, 20 Ann.Cas. 861, 863; Lightfoot v. Poindexter, Tex.Civ.App., 199 S.W. 1152, par. 9. Based on these authorities, we hold that the bequest in favor of Reynold's Orphanage is valid.

Since the trust was a charitable one, it does not come within the constitutional ban against perpetuities. 9 Tex. Jur. 52; 48 C.J. 986; Paschal v. Acklin, 27 Tex. 173; Lightfoot v. Poindexter, Tex. Civ.App., 199 S.W. 1152.

The judgment of the trial court is affirmed.