ESTATE OF AGNES C. ROBINSON, NATIONAL SAVINGS AND TRUST COMPANY, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 105739. Promulgated November 13, 1942.

---

[7] § 13.50 Paul, Federal Estate and Gift Taxation; Paul, Studies in Federal Taxation, 3d ser., p. 26, n. 84.

*J. B. Grice, Esq.*, for the petitioner.
*Elmer L. Corbin, Esq.*, for the respondent.

OPINION.

SMITH, *Judge:* This is a proceeding for the redetermination of a deficiency in estate tax in the amount of $13,681.30. In its petition the petitioner sets forth three assignments of error:

(1) The Commissioner erred in not allowing as a deduction from decedent's gross estate her charitable bequest of the residuary estate, having a value for estate tax purposes of $104,463.99.

(2) The Commissioner erred in not allowing deductions, as administration expenses or claims against the Estate, the expenses of protesting and appealing the asserted tax deficiencies and the interest on any deficiencies determined.

(3) The Commissioner erred in not allowing the statutory credit against the said deficiency of the amount of the District of Columbia inheritance and estate taxes paid or payable by the Executor on the estate of the decedent.

At the hearing it was stipulated that the item relating to administration expenses or claims against the estate, the expenses of protesting and appealing the asserted tax deficiencies, and the interest on any deficiencies determined, and the item relating to credit against the deficiency of the amount of the District of Columbia inheritance taxes paid or payable by the executor would be allowed under Rule 50 computation, provided the petitioner submits evidence of payment of such items.

At the hearing of this proceeding the petitioner submitted evidence that inheritance taxes were paid to the District of Columbia on June 25, 1940, of $5,637.86 plus $28.19 interest, total $5,666.05.

The question for the determination of the Board is whether or not the respondent erred in determining the gross estate of the petitioner by failing and refusing to allow as a deduction an item of $104,463.99 representing the value of the decedent's residuary estate which was transferred in trust to the National Savings & Trust Co. of Washington, D. C., under the provisions of item XV of the decedent's will as a bequest to charity under the provisions of section 303 (a) (3) of the Revenue Act of 1926, as amended by section 403 (a) of the Revenue Act of 1934.

The decedent, Agnes C. Robinson, died testate, a citizen of the United States and a resident of the District of Columbia, on November 28, 1938. The estate tax return was filed with the collector of internal revenue for the district of Maryland. In her will the decedent bequeathed the residue of her estate to the National Savings & Trust Co. in trust for said trustee to manage, care for, and apply the income therefrom in the way and manner set forth in item XV of her will. The value of the residuary estate at the date of the

decedent's death was $104,463.99, which item was claimed as a deduction on the estate tax return filed for the estate. The respondent disallowed the deduction.

The decedent's will provided in material part as follows:

ITEM XV. All of the rest, residue and remainder of my estate and property, of whatever character, whensoever acquired and wheresoever situate, and all estate and property to or in which I may have any right, title, claim or interest at the time of my death, including any interest which I may still own in real estate in the estates of my late father or my late brother, I give, bequeath and devise, in absolute estate and in fee simple, unto the National Savings and Trust Company, a corporation organized under the laws in force in the District of Columbia and doing business therein, in trust, as follows:

One. To hold, manage, invest and reinvest the same, to keep the same invested, with full power and authority to change and alter investments and reinvestments thereof, and to collect the income therefrom.

Two. There are hospitals, homes, church societies in plenty to reach general cases of want and privation, and no lack of applicants to them for help, but I wish to reach those of my kindred, friends and persons of like social position, who shrink from making their wants known outside of those closest to them, and such friends though ready to help, yet lack the means to do so when perhaps a little money given or lent at this moment of distress goes far to sustain a mother suddenly left a widow and her children left fatherless, or a young girl, through no fault of her own is obliged by circumstances to go out from that home and earn self support, they are dazed and stunned until a helping hand reaches out and sustains them until they see their way to stand alone. A little money may enable a feeble one to breathe out her last days peacefully in familiar surroundings, when if sent off to an Institution it would mean despair. Or another case may need money for hospital treatment, and yet another aged, tired, homeless and alone may be supplied the means for her to enter a home or institution and receive its care.

Three. In order to carry out the objects of this trust I therefore authorize, empower and direct said Trustee, in the exercise of the absolute discretion of its proper officers, to use and apply the net income from my residuary estate, or the principal thereof until exhausted to give aid and assistance to those persons in need thereof as above stated or along similar lines.

It is my wish that in the carrying out of the objects in this trust fund preference be given to my relatives and friends who are in need of such aid and assistance. Further it is my wish that said Trustee consult with my friend, Mrs. William Dougal, Washington, D. C., and my cousin, Miss Elise Moncure, in carrying out my wishes.

In order to establish and maintain a permanent committee of ladies to assist said Trustee in the carrying out of the objects of this trust during its duration (which committee shall not exceed five members nor be less than three in number) I authorize and empower my said friend and my said cousin, or the survivor of them, to select from time to time, as may be necessary, such ladies as may be considered suitable and desirable as members of such committee. Also, I authorize and empower the succeeding members of said committee to continue the existence thereof by the selection of members from time to time as may be necessary. Notice in writing of the selection of members of said committee shall be given to said Trustee.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

ITEM XVII. Having thus sought to provide for relations in need, I will that whosoever is discontented, or contests or seeks to break this Will, or bring any claim against me or my estate, is to be cut off from ever receiving any benefit whatsoever from it or from me.

The committee of ladies provided by the terms of item XV of the will, with whom the trustee was to consult and receive assistance in carrying out the provisions of the testamentary trust created by item XV, was enlarged to four members through the selection of Mrs. Dougal and Elise Moncure, the two original members named in the will, and two other ladies, Louise A. Davidson and Mary B. Cox. These two additional members were not related to the decedent. One of them did not know decedent and the other had only met her.

The committee of ladies received no instructions from the trustee or anyone else as to cases they recommended to the trustee for benefits under this trust. They know themselves of people in need and they receive a great many letters suggesting proper recipients of the income of the trust. The committee of four consult together when cases are brought up. They investigate the various cases brought to their attention and submit their recommendations to the trustee. The trustee acts upon the recommendations within its discretion. In their recommendations the committee members do not necessarily show preference to persons that are related to the decedent but look to where the need is greatest.

No payments under the trust have ever been made to decedent's nearest of kin at the time of her death, namely, five first cousins, two in Philadelphia, two in New York, and one in Richmond, Virginia, and no payments to them have ever been proposed or been considered.

The trust fund yields income of from $4,000 to $4,500 per year. Distributions of this income to beneficiaries was begun in November 1940. In carrying out the provisions of the trust distributions have been made to the following beneficiaries upon the recommendation of the committee of ladies:

| | |
|---|---|
| Mary Conway (third cousin) | $300 annually |
| Constance Conway (third cousin) | 300 annually |
| Margaret Moncure (fourth cousin) | 300 annually |
| Mrs. George W. Lewis (fourth cousin) | 300 annually |
| Estelle Eustace (fourth cousin) | 240 annually |
| Mary Allen (fourth cousin) | 150 annually |
| Miss Wise (third cousin) | 900 annually |
| The Misses Buckner (no relationship) | 360 annually |
| Jane H. Jones (no relationship) | 300 annually |
| Susan J. Hill (no relationship) | 300 annually |
| Anne Fletcher (no relationship) | 300 annually |
| Harriet Cringan (no relationship) | 300 annually |
| Mrs. William Griffis (no relationship; to assist her to pay hospital expenses of her husband) | 300 |
| Mrs. Rollins of the Southern Relief Society toward the burial expenses of Misses Virginia and Martha Powell | 300 |

The distributions which had been made up to the date of hearing amounted to $2,190 for relatives and $2,160 for nonrelatives.

Section 812 (d) of the Internal Revenue Code (Title 26 U. S. Code, 1940 Ed., § 811 (j)) provides for the deduction from the gross estate of the following:

(d) TRANSFERS FOR PUBLIC, CHARITABLE, AND RELIGIOUS USES.—The amount of all bequests, legacies, devises, or transfers to * * * a trustee or trustees, * * * but only if such contributions or gifts are to be used by such trustee or trustees, * * * exclusively for religious, charitable, scientific, literary, or education purposes, * * * The amount of the deduction under this subsection for any transfer shall not exceed the value of the transferred property required to be included in the gross estate.

The question here is whether the gift of the residuary estate of the decedent to the trustee was to be used "exclusively for * * * charitable * * * purposes" within the meaning of the taxing statute. It is the contention of the respondent that they are not, since the committee of ladies who are to recommend the distributions of the income of the trust fund are authorized by the testator to give a preference to the decedent's relatives and friends who are in need of aid and assistance. The respondent calls particular attention to the language of item XV of the will, which reads:

It is my wish that in the carrying out of the objects in this trust fund preference be given to my relatives and friends who are in need of such aid and assistance. Further it is my wish that said Trustee consult with my friend, Mrs. William Dougal, Washington, D. C., and my cousin, Miss Elise Moncure, in carrying out my wishes.

We do not think that there would be any question but that this trust fund was created exclusively for charitable purposes but for the fact that the decedent requested that the trustee give preference to relatives and friends in impecunious circumstances. The intention of the testator is very clearly expressed that the entire amount of the income of the trust fund shall be used for charitable purposes. The only question is whether it is a public charity or a private charity.

In support of his contention that the trust is not to be used exclusively for charitable purposes the respondent cites *James Sprunt Benevolent Trust*, 20 B. T. A. 19. That case held that where a trust was created primarily for the education of a relative the fund was a private charity and not a public charity. The question was as to whether the trust was exempt from income tax. The Board held that it was not. Quite clearly the situation there is not comparable with that which obtains in the instant proceeding.

The respondent also cites *Henry C. DuBois*, 31 B. T. A. 239. In that case the Board held that a corporation to which the taxpayer made a contribution was not operated exclusively for charitable purposes during the year when the contribution was made. The facts there are not parallel with those which obtain in the instant proceeding.

Quite clearly the creator of a trust for charitable purposes is under no obligation to exclude from the benefits of the trust relatives who may be in need of assistance. Where the creator has not done so but has allowed relatives to be beneficiaries on the same plane as nonrelatives the trust may still be a charitable trust. *Schoellkopf* v. *United States*, 36 F. Supp. 617; affd. (C. C. A., 2d Cir.), 124 Fed. (2d) 982; *Havemeyer* v. *Commissioner* (C. C. A., 2d Cir.), 98 Fed. (2d) 706; *Proctor Patterson et al., Executors*, 34 B. T. A. 689; *Emerit E. Baker, Inc.*, 40 B. T. A. 555. It has also been held that there may be a public charity even where the creator has given a preference to relatives. *In re Mac Dowell's Will*, 217 N. Y. 454; 112 N. E. 177; *Darcy* v. *Kelley*, 153 Mass. 433; 26 N. E. 1110.

In the case of *In re Mac Dowell's Will, supra*, the Court of Appeals of the State of New York said:

\* \* \* If the purpose to be attained is personal, private, or selfish, it is not a "charitable trust." When the purpose accomplished is that of public usefulness unstained by personal, private, or selfish considerations, its charitable character insures its validity. \* \* \*

Clearly in this case the purpose of the decedent was "unstained by personal, private, or selfish considerations." The action of the respondent in disallowing the deduction of the charitable bequest is reversed.

*Decision will be entered under Rule 50.*