George W. GRIFFIN, Jr., and William R. Griffin, Co-Executors of the Estate of George W. Griffin, Deceased, Plaintiffs-Appellants,

v.

UNITED STATES of America, Defendant-Appellee.

No. 17969.

United States Court of Appeals Sixth Circuit.

Sept. 12, 1968.

Richard W. Iler, Louisville, Ky., Thomas W. Bullitt, on brief; Bullitt, Dawson & Tarrant, Louisville, Ky., of counsel, for appellants.

Louis M. Kauder, Department of Justice, Washington, D. C., Mitchell Rogovin, Asst. Atty. Gen., Meyer Rothwacks, David O. Walter, Attys., Department of Justice, Washington, D. C., on brief; George I. Cline, U. S. Atty., Lexington, Ky., of counsel, for appellee.

Before WEICK, Chief Judge, and EDWARDS and COMBS, Circuit Judges.

EDWARDS, Circuit Judge.

The appellants in this appeal are co-executors of the estate of George W. Griffin. They seek a refund of $27,-924.11 which they have paid in federal estate taxes upon a $100,000 bequest contained in the George W. Griffin will.

An agreed on statement of facts describes and quotes the critical provisions of the will as follows:

"Clause III(a) and (b) of Mr. Griffin's Will contains a bequest of $100,-000 to The Kentucky Trust Company of Louisville, Kentucky, as Trustee, to be held in trust for the life of his widow with directions to the Trustee to pay the entire net income to her along with such part of the corpus as was necessary for her maintenance, welfare and comfort. Clause III(c) then provides, as is pertinent here, as follows:

" '(c) Upon the death of my wife, Willie Lee Griffin, my Trustee shall continue to hold the principal of this trust then remaining in its hands in trust, the principal to be held intact forever, and the income to be used for the education of my grandchildren and for the education of deserving boys and girls in the manner hereinafter set out:

" '(1) The Trustee shall use so much of the net income from this trust as may be necessary to assist any grandchild of mine who desires a four-year college education to obtain such college education in a Protestant Christian College; provided, however, that the sum so expended for or on behalf of any grandchild of mine shall not exceed $750.00 in any one school year. This trust for the benefit of my grandchildren

shall terminate not later than twenty-one (21) years after the date of the death of the last survivor of the group composed of myself, my wife, my three children, and any of my grandchildren who are living at the date of my death; and, at the expiration of such period, the remainder of this trust estate shall be administered entirely as a charitable trust in accordance with the provisions of the next succeeding paragraph.

" '(2) It is my intention and desire to make my grandchildren the primary beneficiaries of this trust, and if at any time any grandchild of mine desires to avail himself or herself of the benefits of this trust, he or she shall be entitled to such benefits even to the exclusion of all other persons. However, if at any time the net income from this trust is in excess of the amount required to provide college educations for those of my grandchildren who then desire same, in accordance with the preceding paragraph, I direct that my Trustee shall use the balance of said net income to provide as many annual scholarships of Five Hundred Dollars ($500.00) each, as possible, to worthy boys or girls residing in Southeastern Kentucky who are ambitious to receive a college education at any Protestant Christian College, and who, without financial assistance would be unable to attend college.' "

Since the basic statutory provision relied upon by the taxpayers in this appeal allows deduction of bequests which are to be used "exclusively" for charitable or educational purposes, more facts must be stated to present the taxpayers' contentions.

■ After Griffin's decease, his widow formally renounced his will and along with the co-executors filed an action in a Kentucky Circuit Court for construction of the will in the light of her renunciation. The Kentucky Court judgment held that Mrs. Griffin had no interest in the Clause III trust and that it was "a charitable trust for all purposes." [1] Further, as of the date of trial, substantially all of the income (some $19,000) had been expended for scholarships for needy "boys or girls residing in Southeastern Kentucky."

Finally, at trial of this case before the United States District Court, the United States conceded that the value of this bequest, determined as of the time of legal termination of the family preference scholarship feature (i. e., 21 years after the death of all grandchildren living on the date of the death of the testator), should be deducted for purposes of computation of the estate tax. Testimony established this value at $3,107.

The District Judge who heard this case entered the following particularly relevant findings of fact and conclusions of law:

"FACT

\*  \*  \*  \*  \*  \*

"4. The trust created by Clause III of the decedent's will has as its primary object the provision for a private trust for the education of all of his grandchildren including those who might be born after his death. On the satisfaction of this primary object, the trust was to take on a charitable aspect. The primary private aspect of the trust would not terminate until 21 years after the date of the last survivor of the group composed of the decedent's wife, his three children, and any grandchildren living at the date of the decedent's death.

"5. Because of the fact that grandchildren born after the decedent's

1. This state judgment, of course, does not control the application of the federal tax laws. Morgan v. Commissioner of Internal Revenue, 309 U.S. 78, 60 S.Ct. 424, 84 L.Ed. 585 (1940).

death will be beneficiaries of the private aspect of the trust, it is impossible to determine as of the date of the decedent's death what portion of the income will be available for charitable use until the death of all lives in being.

\* \* \* \* \* \*

"11. The value of the charitable aspect of the trust after the death of all lives in being is $3,107.

"LAW

\* \* \* \* \* \*

"3. No charitable deduction is allowable where the valuation of the charitable interest is dependent upon the birth of issue.

"4. No charitable deduction is allowable for a trust created for the primary purpose of educating the settlor's grandchildren.

"5. The defendant, having conceded that a charitable deduction is allowable in the sum of $3,107, judgment should be entered for the plaintiff for the amount of tax attributable thereto."

On this appeal the taxpayers contend 1) that under such cases as the Estate of Annie Sells, 10 T.C. 692 (1948), and the Estate of Agnes C. Robinson, 1 T.C. 19 (1942), the entire bequest should be treated as an educational bequest, and 2) that in any case, there should be deducted as an educational bequest the value of that portion of the bequest which would go to worthy boys and girls of Southeastern Kentucky as determined by actuarial methods.

The answer to the first of these arguments must in our view be determined in the negative because of the language of the statute itself:

"§ 2055. *Transfers for public, charitable, and religious uses*

(a) *In general.*—For purposes of the tax imposed by section 2001, the value of the taxable estate shall be de-termined by deducting from the value of the gross estate the amount of all bequests, legacies, devises, or transfers \* \* \*—

\* \* \* \* \* \*

"(3) to a trustee or trustees, or a fraternal society, order, or association operating under the lodge system, but only if such contributions or gifts are to be used by such trustee or trustees, or by such fraternal society, order, or association, exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, and no substantial part of the activities of such trustee or trustees, or of such fraternal society, order, or association, is carrying on propaganda, or otherwise attempting, to influence legislation; \* \* \*" 26 U.S.C. § 2055(a) (3) (1964).

The testator in making this will obviously had no intention at all of making Clause III an exclusively "charitable" or "educational" bequest. In its original form Clause III was primarily designed to provide for the maintenance of testator's widow. During her life the income from the trust was dedicated entirely to this purpose, and a provision of the will allowed for invasion of the corpus of the trust. We recognize, of course, that the widow's renunciation completely eliminated this aspect of the bequest. But the history of Clause III is still of importance in understanding and interpreting those portions of the bequest which remain. As we see the matter, testator intended to provide first for his widow, then for the education of his grandchildren, and then for the education of "worthy boys and girls of Southeastern Kentucky".

Contrary to the situation in the *Sells* and *Robinson* cases 1) the provision for the family class scholarships was made "to the exclusion of all other[s]," and 2) as to the family class, there was no requirement of a showing of need, while this was required as to "[other] worthy

boys and girls of Southeastern Kentucky," and 3) the family class scholarships were in a different sum ($750 per year, as compared to $500 per year of the general educational class).

■ We believe that the trust provisions applicable to the grandchildren constitute a private trust to which the testator intended to and did give absolute precedence. It does not resemble a public educational trust where some relatives may benefit because they are part of the general class, whether specifically preferred as in *Robinson,* supra, and *Sells,* supra, or not, as in Schoellkopf v. United States, 124 F.2d 982 (2d Cir. 1942).

■ It is clear, of course, that a testator cannot set up a trust to provide educational scholarships for his close relatives and by so doing take advantage of an educational deduction under section 2055. Such a trust would serve a private rather than a public purpose. Estate of Philip Dorsey, 19 T.C. 493 (1952); Amy Hutchison Crellin, 46 B.T.A. 1152 (1942); Henry C. DuBois, 31 B.T.A. 239 (1934); James Sprunt Benevolent Trust, 20 B.T.A. 19 (1930); Restatement (Second) of Trusts § 370, comment k; § 375, comment d (1957). See also Russell v. Allen, 107 U.S. 163, 2 S.Ct. 327, 27 L.Ed. 397 (1882); 4 A. Scott, Trusts § 375.3 (2d ed. 1956).

We believe the District Judge was right in concluding that the bequest taken as a whole could not be considered exclusively educational or charitable within the meaning of section 2055.

The second appellate argument of the taxpayers presents a much more plausible rationale. It is that even if the bequest as a whole cannot be regarded as exclusively charitable or educational, it is possible to estimate with reasonable accuracy the value of that portion of the bequest which will be exclusively employed for such purposes.

There is a Treasury Department Regulation squarely in point on this argument, however. It provides:

"If, as of the date of a decedent's death, a transfer for charitable purposes is dependent upon the performance of some act or the happening of a precedent event in order that it might become effective, no deduction is allowable unless the possibility that the charitable transfer will not become effective is so remote as to be negligible. * * *" Treas.Reg. § 20.2055-2 (b) (1942).

This regulation is applicable to this trust, since testator, after providing scholarships for his grandchildren, said:

"* * * at the expiration of such period, the remainder of this trust estate shall be administered entirely as a charitable trust in accordance with the provisions of the next succeeding paragraph."

The taxpayers do not appear to contest the validity of this regulation. Generally they seek to contend that they are within its terms.

■ The birth to or the adoption of children by three sets of parents (testator's children and their spouses) is, however, hardly a certain matter. Nor is the inclination or disinclination of such children to take advantage of a bequest which provides them with scholarships in a "Protestant Christian College."

Since testator provided scholarships for his grandchildren "to the exclusion of all other[s]," these factors are clearly "precedent events" within the meaning of the regulation.

■ If it had been testator's purpose to have his trustees satisfy his bequests out of the corpus of the trust, the estimates of the total value of the private trust might be held to be presently determinable and, hence, severable. But where, as here, the scholarships are to

be paid out of income, and each year's income available to the charitable trust purpose is contingent upon the precedent events just cited, such computation for any one year would be much more a matter of speculation than a matter of reasonable certainty. Commissioner of Internal Revenue v. Estate of Sternberger, 348 U.S. 187, 75 S.Ct. 229, 99 L.Ed. 246 (1955); Merchants Nat'l Bank v. Commissioner of Internal Revenue, 320 U.S. 256, 64 S.Ct. 108, 88 L.Ed. 35 (1943); Humes v. United States, 276 U.S. 487, 48 S.Ct. 347, 72 L.Ed. 667 (1928). Like the District Judge, we do not believe this record supports severance of the private from the charitable trust for purposes of section 2055.

The government in this case has, however, recognized (as we think it must) that at some point the private trust must terminate and the $100,000 trust corpus provided by Griffin's will must become exclusively an educational and charitable bequest. The time chosen and given effect in this judgment is, however, the date of the legal termination of the trust. The appellants assert that this event as actuarily computed will occur approximately 100 years after Griffin's death.

The birthrate table [2] which is in evidence in this case strongly suggests that for approximately the last half of that period the chance of any actual use of the private trust may be, in the language of Treasury Regulation § 20.2055–2(b), "so remote as to be negligible." Appellants, in seeking deduction of the entire trust or, alternatively, of all funds which might be argued to be destined for public educational uses, made no effort to present testimony pointing toward an earlier termination date for the private trust than that conceded by the government.

We prefer, however, not to foreclose their doing so if there are facts available to support such a claim.

2. See Appendix A.

Our affirmance of the judgment will therefore be without prejudice to appellants' right to file a petition to modify the judgment by asserting and offering proof as to an earlier termination date.

Affirmed.

## APPENDIX A

### ESTATE OF GEORGE W. GRIFFIN

#### Birth Rate Table

Graduated* Birth Rates for year 1957 taken from Table No. 52. Live Birth Rate, by age of Mother from "Statistical Abstract of the United States, 1964."

| Age Last Birthday | 1000 $b_x$ |
|---|---|
| 25 | 238.6 |
| 26 | 223.0 |
| 27 | 204.7 |
| 28 | 186.2 |
| 29 | 168.3 |
| 30 | 150.9 |
| 31 | 134.4 |
| 32 | 119.2 |
| 33 | 105.3 |
| 34 | 92.7 |
| 35 | 81.0 |
| 36 | 70.0 |
| 37 | 59.6 |
| 38 | 49.6 |
| 39 | 40.1 |
| 40 | 31.1 |
| 41 | 23.1 |
| 42 | 16.0 |
| 43 | 11.6 |
| 44 | 8.1 |
| 45 | 5.4 |
| 46 | 3.1 |
| 47 | 1.1 |
| 48 | .9 |
| 49 | .7 |
| 50 | .4 |
| 51 | .2 |

* Using the Jenkins Modified Osculatory Interpolation Formula