## SCHOELLKOPF v. UNITED STATES.
### No. 62.

Circuit Court of Appeals, Second Circuit,
Jan. 5, 1942.

Bernard Chertcoff, Sp. Asst. to Atty. Gen., and George L. Grobe, U. S. Atty., of Buffalo, N. Y. (Samuel O. Clark, Jr., Asst. Atty. Gen., Gerald L. Wallace, Sp. Asst. to Atty. Gen., and R. Norman Kirchgraber, Asst. U. S. Atty., of Buffalo, N. Y., of counsel), for appellant.

Ralph M. Andrews, John L. Kenefick, and H. Kenneth Haller, all of Buffalo, N. Y., for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

The United States appeals from a judgment refunding part of the money collected from the plaintiff as his income tax for the year 1929. The only issue is whether a sum which he added in that year to the principal of a trust fund was a charitable contribution within § 23(n) of the Revenue Act of 1928, 26 U.S.C.A. Int.Rev. Acts, page 358. The facts which were stipulated were as follows. On November 12, 1928, the plaintiff by deed set up two trusts, one called the "Buffalo Trust," the other the "Boston Trust"; the contribution in question was an addition to the principal of the "Boston Trust." By the "Buffalo Trust" (which was an amendment to an earlier trust) he transferred a large number of securities to the Marine Trust Company of Buffalo in trust (1) to pay the income to the settlor for life; (2) upon his death and that of a named grandson to pay to the male issue of that grandson, if any, $500,000; (3) upon the settlor's death to pay any bequests, taxes and debts which his estate might be unable to pay; (4) after

his death to pay certain annuities; (5) after his death to pay a fixed annuity to his wife and the remainder of the income to an institution called the "Buffalo Foundation," (concededly among those contemplated by § 23(n) ); (6) upon the death of the survivor of him and his wife to hold $500,000 for the benefit of "Buffalo University," the income of which should be accumulated until the fund reached $2,000,000, and thereupon to pay principal and income to the university for a library; (7) to hold the residue of the funds for the general purposes of the "Buffalo Foundation," the income beyond $12,500 to be accumulated until the fund amounted to $10,500,000, after which the income was to be paid to the Foundation. Among beneficiaries of the residuary fund the Foundation might include "any worthy descendants" of the settlor's father who needed money "to complete their education or for their proper maintenance and support." All provisions for accumulation were specifically made only precatory. Finally, the deed provided that, except for the library trust of $500,000, it was "subject to modification and/or revocation by the Grantor at any time during his lifetime."

By the "Boston Trust" the plaintiff transferred other securities to the Old Colony Trust Company upon trust to collect and accumulate the income for one hundred years, at the end of which time it should divide the whole fund into two equal parts, and pay over one part to the Marine Trust Company of Buffalo, called the "Ultimate Trustee," "as trustee for the Buffalo Foundation under the provisions of said Indenture of Trust, Exhibit 'A,' made by the Grantor with the said The Marine Trust Company of Buffalo as Trustee, hereinbefore referred to and made a part hereof, and any and all agreements supplemental thereto or in modification thereof * * * provided said Trust Indenture * * * is then in force and effect; otherwise such payment and delivery shall be made to the Ultimate Trustee * * * as Trustee for the Buffalo Foundation." The other half was to be held for fifty years longer, and then divided into halves, one half to go to the "Ultimate Trustee," the other to be retained; and so on "in perpetuity." The trust was made "an irrevocable trust for charitable, educational and/or benevolent purposes and the Grantor reserves no right to revoke the same in whole or in part, or to divert either the principal or income from such purposes, or to modify the provisions herein made for the compensation of the Trustees, provided, however, that the Grantor expressly reserves the right during his lifetime to supplement and/or modify the provisions regarding the method of administration thereof, the method of determining the beneficiaries, and the periods for accumulation and dates for distribution of the principal."

The Commissioner ruled that the plaintiff's power to accelerate the date of distribution of the principal of the "Boston Trust" enabled him to compel the Old Colony Trust Company to pay over the principal to the Marine Trust Company of Buffalo at his pleasure; and that that company would then hold the principal as trustee upon the same terms as it held the principal of the "Buffalo Trust." Further, that since among those terms was the reserved power of revocation during the settlor's life, the plaintiff might at any later time resume his ownership of the funds making up the "Boston Trust," and the contribution was not therefore within § 23(n). The plaintiff answers that so to construe the "Boston Trust" was to disregard its prevalent purpose, as indicated, not only in the provision we have quoted, expressly making it "irrevocable," but also in one of its recitals—"the Grantor desires to create a charitable trust in perpetuity." He argues that the clause "under the provisions" etc. merely incorporated the duties of the trustee in the "Buffalo Trust" towards the beneficiaries, and did not extend to its general administrative provisions, as to which the "Boston Trust" was independently a complete instrument. The judge accepted this interpretation of the documents and directed judgment for the plaintiff.

We agree. The period, during which the Marine Trust Company was to hold the Boston funds as "Ultimate Trustee" after distribution by the Old Colony Trust Company, must be regarded as part of the duration of the "Boston Trust" itself. The settlor did not create that trust merely to store up the income of the funds preparatory to setting up a separate and independent trust of which the Marine Trust Company was to be the trustee. That would scarcely have justified calling the "Boston Trust" a charitable trust at all; nor would the settlor have chosen the term "Ultimate Trustee" to describe that company. There was but one trust; "a charitable trust in perpetuity" as the settlor himself described it, and he particular-

ly and quite gratuitously—Restatement of Trusts § 330(2)—renounced any power to revoke it. If that be once admitted, as it must, all that remains is the resolution of the conflict resulting from the renunciation in the deed itself of any power to revoke, and the reservation of such a power in the deed which was incorporated by reference. Indeed, there is no conflict at all unless we construe the clause of the "Boston Trust," "under the provisions" etc., to go beyond the duties of the trustee. That is a reasonable interpretation and is very probably the right one; but it is not necessary to stand upon it. Even though we assume that the clause incorporated the administrative provisions of the "Buffalo Trust" in bulk, still the "Boston Trust" must prevail. In the first place, the express renunciation is an explicit, particular and even redundant expression of the settlor's underlying purpose, and was further evidenced by the recital; it was far more likely to represent his paramount intention than an administrative provision, adopted along with others from another instrument. And this is all the more likely since, qua such provisions, the "Boston Trust" was itself adequately equipped. But the conclusive argument is that, if the reserved power to revoke remains at all, the effect of the renunciation is for all purposes lost; it is brutum fulmen. The defendant's argument then becomes unanswerable, for the plaintiff confessedly has power at any time to shorten the time of accumulation, and to compel a distribution by the Old Colony Trust Company to the "Ultimate Trustee"; and by hypothesis he then gets power instanter to revoke the whole trust. Thus by executing these two papers he can circumvent the express renunciation, fortified as it is by the recital. The renunciation is then only a denial of power to revoke the "Boston Trust" for as long as the settlor may choose to let the income accumulate; that is to say, as soon as the trust becomes a "charitable trust" in any real sense at all, it becomes a revocable trust in direct contradiction with the solemnly declared purpose that it shall remain "a charitable trust in perpetuity."

There remain two other questions. The provision in the "Buffalo Trust," allowing the Foundation to include among the beneficiaries any worthy descendants of the settlor's father, did not prevent it from being a "charitable trust." The Foundation had that power already,

for its constitutive instrument included among its possible objects—Article IV(1)(d) of the Resolution under which it was formed—"The care of needy men, women and children." Had the trust compelled the Foundation to care for the settlor's relatives, the result might have been different; it did not, it did no more than permit them to be included; it did not even give them a preference. The question is not indeed one of state law but of the meaning of the statute itself; but it is not irrelevant that both in Massachusetts (Dexter v. President, etc., of Harvard College, 176 Mass. 192, 57 N.E. 371) and New York (In re MacDowell's Will, 217 N.Y. 454, 112 N.E. 177, L.R.A.1916E, 1246, Ann. Cas.1917E, 853) even a preference to the settlor's kin does not take away the charitable character of the trust. See also Havemeyer v. Commissioner, 2 Cir., 98 F. 2d 706; Restatement of Trusts, § 375, Comment c.

Second, by an amendment to the "Boston Trust" made in 1929 under his reserved power to change the beneficiaries, the plaintiff provided that when the principal of the trust should equal $5,000,000 the trustee should pay annually $50,000 to one German city and $100,000 to another, both in Wurtemburg, "for charitable, educational and/or benevolent purposes." This the defendant challenges because § 23 (n) (1) exempts gifts made to municipalities within the United States, and by implication does not exempt any others. That would indeed preclude unrestricted gifts to foreign cities, and is a good answer so far as concerns § 23(n) (1); but § 23(n) (2) creates an exemption without local limitations when the purposes are charitable as there defined. The canon, expressio unius, does not therefore apply, and the gift is exempt unless we must import a general limitation into § 23(n) (2) so that it shall include no charities except those for the benefit of persons within the United States. We do not understand that the defendant so argues, nor is there any warrant for it in the language of the statute; indeed, the contrast between subdivisions one and two strongly suggests the opposite. Moreover, since the outbreak of the war the Treasury has allowed such deductions even when made by corporations under § 23(q) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev. Acts, page 830 (I.T. 3048); a fortiori they are allowable to individuals under § 23(n).

Judgment affirmed.