OLD COLONY TRUST COMPANY, as
Executor Under the Will of Charlotte
E. Sills, Plaintiff, Appellee,

v.

UNITED STATES of America,
Defendant, Appellant.

No. 7719.

United States Court of Appeals,
First Circuit.

Jan. 12, 1971.

Stephen Schwarz, Atty., Tax Div., Dept. of Justice, with whom Johnnie M. Walters, Asst. Atty. Gen., Meyer Rothwacks, Thomas L. Stapleton, Attys., Tax Div., Dept. of Justice, and Herbert F. Travers, Jr., U. S. Atty., were on brief, for appellant.

Kenneth W. Bergen, Boston, Mass., with whom M. Gordon Ehrlich, Boston, Mass., John R. Garson, Cambridge, Mass., and Bingham, Dana & Gould, Boston, Mass., were on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

This is an appeal from a decision of the district court upholding the claim of Old Colony Trust Company, executor under the will of Charlotte E. Sills, to a refund of federal estate taxes and interest in the amount of $831,608.31.[1]  It

---

[1] The Internal Revenue Service, after correspondence and conferences with appellee, disallowed an estate tax deduction for the ⅔₅th residuary bequest to the Belleville General Hospital, Belleville, Canada, but contemporaneously allowed a ⅟₁₅th residuary bequest to the same re- mainderman "to be used towards the construction and maintenance of a convalescent home."  Appellant in its amended answer to appellee's complaint argued as a subsidiary matter that the IRS had erroneously allowed the latter deduction and sought an off-set against any

presents the question whether a proportional residuary bequest to a foreign public hospital qualifies for an estate tax deduction under section 2055(a) of the Internal Revenue Code. 26 U.S.C. § 2055(a). The district court has set out the stipulated facts at length in its opinion, 313 F.Supp. 980 (1970); we shall note only in summary fashion those facts relevant to our discussion of the major contentions raised by the parties. We reproduce in the margin the pertinent provisions of the governing statute.[2]

It is appellant's contention that by virtue of its connection with the city and county governments, the public hospital beneficiary is itself a "political subdivision"; that, since § 2055(a) (1) allows deductions for bequests for public purposes only to political subdivisions of the United States, the Canadian hospital could not qualify under (a) (1); and that by the application of *inclusio unius est exclusio alterius*, "political subdivisions" cannot qualify under the other enumerated subsections, the deduction was therefore properly disallowed. In addition, appellant argues on broad policy grounds that § 2055(a) should not be construed so as to allow a deduction for a bequest to a subdivision of a foreign government which would necessarily result in an alleviation of the financial burden on that government. Furthermore, appellant suggests that Congress could never have intended to indirectly aid governments which might be hostile to United States' interests.

We begin by noting that, while tax deductions are allowable only if specifically authorized by the Internal Revenue Code, *see* Continental Illinois National Bank & Trust Co. v. United States, 403 F.2d 721, 725, 185 Ct.Cl. 642 (1968), our analysis must also give due weight to the Congressional policy of solicitude toward charitable bequests. Norris v. Commissioner of Internal Revenue, 134 F.2d 796 (7th Cir. 1943), cert. denied 320 U.S. 756, 64 S.Ct. 63, 88 L.Ed. 450, rehearing denied, 320 U.S. 813, 64 S.Ct. 199, 88 L.Ed. 491 (1943). We draw from these two principles, which pull in opposite directions, the conclusion that if the words of the statute can, without distortion, be read as authorizing a deduction, a strong showing of specific legislative intent, policy, or logic to the contrary would be required to compel disallowance of the deduction. We therefore turn first to the text, and to relevant government rulings and regulations shedding some light on the words used. We then consider the significance for this case of *inclusio unius*, the relative persuasiveness of the conflicting judicial precedents, and, finally, the weight of appellant's policy argument.

As to what constitutes a "political subdivision", we are given little guidance by § 2055(a) or its accompanying

recovery accruing to the estate for claimed attorney fees and other litigational expenses, a contention we deal with below.

2. "§ 2055. Transfers for public, charitable, and religious uses

(a) *In general.*—For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate the amount of all bequests * * *

(1) to or for the use of the United States, any State, Territory, and political subdivision thereof, * * * for exclusively public purposes;

(2) to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, including the en-

couragement of art and the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private stockholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation;

(3) to a trustee or trustees * * * but only if such contributions or gifts are to be used by such trustee or trustees, * * * exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, and no substantial part of the activities of such trustee or trustees, * * * is carrying on propaganda, or otherwise attempting, to influence legislation."

regulations. It is not at all clear, however, that appellant is justified in treating "subdivision" as interchangeable with "entity", "body", "instrumentality", "arm", "agency", or "unit". Common understanding, for example, might as well view "subdivision" as implying a geographic unit exercising sovereign powers, e.g., a city or county government. The term has been comprehensively defined for purposes of analogous § 103(a) (1)—the provision allowing an exemption from gross income for interest received on the "obligations of a State, a Territory, or a possession of the United States, or any political subdivision of any of the foregoing" as follows:

> " * * * The term 'political subdivision', for purposes of this section, denotes any division of the State, Territory, or possession of the United States which is a municipal corporation, or to which has been delegated the right to exercise part of the sovereign power of the State, Territory, or possession of the United States." Treasury Regulation on Income Tax (1954 Code), Sec. 1.103–1 (26 C.F.R.).

Reference in the regulation to the right to exercise part of the sovereign power as characteristic of a "political subdivision" evokes the distinction between "proprietary" and "essential governmental" functions. The operation of a state hospital has been held not to be an "essential governmental function". Liggett & Myers Tobacco Co. v. United States, 13 F.Supp. 143 (1936), findings amended, 14 F.Supp. 543, 82 Ct.Cl. 328 (1936), aff'd on other grounds, 299 U.S. 383, 57 S.Ct. 239, 81 L.Ed. 294 (1937).

Relevant to this distinction between "political subdivision" and some other form of public entity is an Opinion of the Attorney General defining "political subdivision" as:

> "* * * any division of the state made by the proper authorities thereof, acting within their constitutional powers, for the purpose of carrying out a portion of those functions for the state which by *long usage* and *inherent necessities* of government have always been regarded as public." 30 Op.A.G. 252 (1914). (Emphasis added.)

And for purposes of the taxability of compensation received by officers and employees of a "political subdivision", the IRS has classified the operation of a "general hospital" by a state or political subdivision as a "proprietary" rather than an "essential governmental function".[3] Mim. 3838, 1938–1 C.B. 181, 186.

Another major aid to our understanding of the term "political subdivision" arises indirectly from an IRS Revenue Ruling under section 501(c) (3), Rev. Rul. 60–384. The IRS there recognizes that a "wholly owned state or municipal *instrumentality* which is a separate entity and which is organized and operated exclusively for purposes described in section 501(c) (3) [charitable purposes] * * * may qualify for exemption from Federal income tax under section 501(a) * * * [as a charitable corporation]." (Emphasis added.) In order to qualify, the instrumentality must not be an integral part of the governmental unit, must be a separately organized counterpart of a purely private organization carrying on only charitable functions, and must not be "clothed with powers" of a sovereign, such as regulatory and enforcement responsibilities. A later revenue ruling expressly provided for a public hospital corporation to qualify under § 501(c) (3), notwithstanding the fact that it, unlike the remainderman here, possessed the power to acquire land by right of eminent domain, as long as it did not carry on regulatory and enforcement activities. Rev.Rul. 67–290.

Considering these official pronouncements as a whole then, we can visualize

---

3. What can be inferred from this pronouncement in addition is that a governmental connection alone is not sufficient to make an organization a "political subdivision". *See, infra.*

as an aid to our task of statutory analysis three general categories of public entities: political units, such as municipal corporations; integral governmental instrumentalities exercising "sovereign" powers, such as a county sewage district; and non-integral governmental instrumentalities which are clear counterparts of private charitable corporations, such as a separately organized state college. The first two groupings can be considered "political subdivisions" for purposes of § 2055(a) (1); governmental organizations falling into the third category could qualify as "charitable corporations" for purposes of § 2055(a) (2).

We now apply this trichotomy to the stipulated facts of the case at bar. The residuary beneficiary here is a public hospital corporation operated as a nonprofit organization exclusively for the purpose of providing care for the sick and medical educational facilities. It was privately organized in 1886 by the Women's Christian Association of Belleville, which in 1948, because of financial conditions, transferred title to the assets of the hospital to the city. Subsequent to decedent's death a special Act of the Ontario legislature split title to the assets 65–35 between the city and county governments. At no time have the governmental units exercised any control over the management and operation of the hospital other than to appoint a majority of the Board of Governors. Both the city and county have made capital outlays for the use of the hospital.

The hospital separately administers its own accounting and banking functions, pays its own employees, has sued and been sued in its own name exclusively,[4] has never carried out propaganda activities to influence legislation. No part of its net earnings inures directly or indirectly to the benefit of any private stockholder or individual. There is no indication that the hospital carries on regulatory or enforcement activities or in any other way exercises sovereign power. Under Canadian law,

the beneficiary is a "registered charitable corporation" and is a qualified recipient for deductible charitable bequests under the Canadian Estate Tax Act, section 7.

It is obvious from the above that the hospital is not a purely private enterprise. The appellant stresses that this is a determinative factor, that even the slightest of governmental connections is sufficient to disqualify an otherwise purely charitable corporation from being considered a qualified § 2055(a) (2) recipient. Such a proposition is nowhere supported by IRS pronouncements or available legislative history; in fact, the latter is non-existent and the former, as we discussed above, points to a contrary conclusion. There is no logical reason why the non-integral "publicness" of a charitable corporation should constitute an immutable disqualifying taint for purposes of § 2055(a) (2) and not for any other tax provision using the same operative designation "charitable corporation".

Employing our tripartite classification, the Belleville General Hospital fits most comfortably into the third grouping of public entities, i.e., a non-integral governmental instrumentality which is the clear counterpart of a private charitable hospital. The hospital exercises no sovereign powers of the city or county, levies no assessments, carries on no regulatory or enforcement activities. It is structured as a distinct corporate entity with separate management, accounting, banking and investment functions. Under any gloss of common usage, Belleville Hospital is not a political subdivision, but is rather a corporation organized and operated exclusively for charitable purposes.

Appellant's reliance on the canon *inclusio unius est exclusio alterius* is misplaced. It argues that Congress intended to deal with all public entities in § 2055(a) (1) and decided to limit deductions to bequests to domestic political subdivisions only. However, as we noted at the outset, we see no indication on

4. Including at least one suit against the City of Belleville.

its face or in related regulations that § 2055(a) (1), with its reference to "subdivision", was intended to cover the entire field of arguably public entities. Furthermore, appellant fails to recognize that each subsection of § 2055(a) has *two* operative parts including: (1) the type of qualifying recipient and (2) the limited purposes for which the bequest may be given.[5] Examining the provision as a whole, all that can reasonably be inferred is that Congress intended to broaden the class of qualifying "purposes" to general "public purposes" when the recipients were *domestic* governmental units or public subdivisions thereof. This says nothing about the non-availability of a deduction for a bequest to a foreign publicly-connected corporation to be used exclusively for the more narrowly limited "charitable purposes" of § 2055(a) (2).

Only one court has ever applied the *inclusio unius* doctrine to section 2055(a). In Edwards v. Phillips, 373 F.2d 616 (1967), the Tenth Circuit held that a bequest to a school district in Denmark, to be used for educational purposes, did not qualify for a charitable estate tax deduction. It was stipulated by the parties in that case that the beneficiary was a "political subdivision". The court noted that it found "nothing outside the language of the statute that leads to resolution of the question. Thus we are left with the venerable doctrine of inclusio unius est exclusio alterius * * *." 373 F.2d at 619. We have examined the taxpayer's brief in *Edwards*. That the court was left with nothing but the maxim is attributable to the fact that its attenion was not direced either to the prior case of Schoellkopf v.

United States, 124 F.2d 982 (2d Cir. 1942), or to the above noted rulings and regulations.

In *Schoellkopf* Judge Learned Hand construed section 23(n) of the Revenue Act of 1928 containing language identical to the present § 2055(a) but dealing with the deductibility of gifts for income rather than estate tax purposes. The gift there in question was to two German cities "for charitable, educational and/or benevolent purposes." The court held the doctrine of *inclusio unius* inapplicable since the corporation subsection "creates an exemption without local limitations when the purposes are charitable as there defined." 124 F.2d at 985. The present appellant counters this precedent by stating that the provision which Judge Hand construed now expressly excludes deductions for income tax purposes for gifts to foreign charitable corporations. This merely shows not that the court was wrong but that Congress knows how to accomplish directly what the court had said was not accomplished by implication. Moreover, there may be some significance in the fact that Congress has shown its ability to locally limit gifts for income tax purposes but has failed to do so under § 2055(a) with respect to estate tax on bequests. The importance of *Schoellkopf*, as far as we are concerned, is not that it is totally dispositive of the issue on this appeal, but rather that it demonstrates the appropriate technique of statutory analysis with precisely the same statutory arrangement.

The two courts which have dealt with § 2055(a) subsequent to *Edwards* have expressly rejected the Tenth Circuit's

---

5. We cannot refrain from observing that not only should ancient Latinized maxims be used with caution, S.E.C. v. C. M. Joiner Leasing Corp., 320 U.S. 344, 350, 64 S.Ct. 120, 88 L.Ed. 88 (1943), but also that if they are to be heavily relied on, they should be used correctly.

As Llewellyn points out in The Common Law Tradition—Deciding Appeals, 1966, p. 106, n. 137, the maxim "is in point only in regard to excluding *the* other one of possibilities limited in advance to

two." (Emphasis in original.) In other words, since there are two components in § 2055(a) (1) and each could have only one opposite, the section impliedly excludes (1) bequests to domestic political subdivisions for "private" purposes and (2) bequests to foreign political subdivisions for "public" purposes. To say that bequests to foreign political subdivisions for "charitable" purposes are also proscribed is to try to use the rifle-like maxim as a double-barreled shotgun.

rationale and have adopted in its stead the approach to statutory construction of Judge Hand. Continental Illinois National Bank & Trust Co. v. United States, 403 F.2d 721, 185 Ct.Cl. 642 (1968); Kaplun v. United States, 303 F. Supp. 733 (S.D.N.Y.1969), aff'd, 436 F.2d 799, (2d Cir. 1971). Both cases involved bequests to foreign governmental units, and the courts there construed and applied § 2055(a) (3) which allows a deduction for a bequest to a trustee for exclusively charitable purposes. The Court of Claims in *Continental Bank* held that "unrestricted bequests to foreign cities are not deductible under the applicable statute and regulations", but noted in dictum that "contributions and gifts to foreign cities for exclusively charitable purposes are deductible", 403 F.2d at 727, notwithstanding the political nature of the trustee. The district court in *Kaplun,* a case now on appeal to the Second Circuit, followed the lead of the Court of Claims' dictum, and held that a bequest to a foreign government in trust for exclusively charitable purposes did qualify under § 2055(a) (3).

Appellant advances the policy argument that the rule accepted by all of these authorities except the *Edwards* court results in the anomaly of using United States tax money to alleviate, directly or indirectly, the financial burden of foreign governments,[6] some of whom might be hostile to the United States. There is, as we have observed, no legislative history shedding light on Congressional intent. We can readily appreciate, however, a reasonable interest in promoting charitable gifts to help needy people in foreign lands, even those with hostile governments, for humane reasons as well as for promoting good will.

The fact that a gift to a municipal instrumentality such as Belleville Hospital may alleviate the financial burdens of the general governmental unit in some cases does not seem reason enough to reject the conclusions reached above. A gift to a large important *private* charity in a foreign country, which is unquestionably deductible for estate tax purposes by IRS regulation 20.2055–1, could have a more pronounced effect on the overall foreign government's financial burden than a comparatively smaller gift to a municipal instrumentality carrying on precisely the same function.[7] Furthermore, Congress has given no indication that its desire to promote charitable activities, foreign as well as domestic, was to be tempered by any consideration of the incidental and varying effect of an exclusively charitable gift on the overall financial expenditures of the foreign country involved.

In sum then, considering all available aids to construction, the precedent on

---

6. Apparently the IRS has not always been concerned about the dire effects of promoting bequests to foreign governmental units and officials. In In re Sage's Estate, 122 F.2d 480 (1941), a Third Circuit case which dealt with an unrelated matter, the court noted that an estate tax deduction was allowed by the IRS under the predecessor of § 2055(a) (3) for a bequest to the Lord Provost of Glasgow, Scotland, which was accompanied merely by the precatory language of the deceased requesting that the moneys be "distribute[d] same among such institutions in Scotland, as are devoted to the care and maintenance of the blind, maimed and disabled soldiers and sailors of the British Army and Navy according to his best judgment and discretion."

7. Situations may arise where a charitable gift designated for a particularized charitable purpose would require additional rather than less foreign governmental expenditures. In the case at bar, for example, the decedent also bequeathed a proportional remainder amount to Belleville General Hospital "to be used toward construction and maintenance of a convalescent home." If such funds were insufficient to fully accomplish the stated purpose, the local governmental units might have to raise additional capital to complete the financing of the particular project. Thus the alleviation effect on the public treasury depends on particular facts and situations such as the financial capacity and eleemosynary responsibilities of the governmental unit involved. Such an "iffy" question does not warrant a broad proscription on the basis of tax "policy".

this and related tax provisions combined with the official pronouncements that are relevant to a resolution of this question, it is our conclusion that the appellee is entitled to the charitable deduction under section 2055(a) (2).

Appellee has presented two additional bases on which the estate tax deduction could be granted, relying on the decree of the Massachusetts Supreme Judicial Court impressing the bequest with a trust and the provisions of the Estate Tax Treaty between Canada and the United States. Because of our disposition of the appeal on the above grounds we need not reach these alternate propositions. Nor must we deal with appellant's final contention that the fact that the IRS erroneously allowed an estate tax deduction for the additional bequest to Belleville Hospital "the same to be used towards construction or maintenance of a convalescent home", should not preclude the appellant from off-setting the amount involved against the litigation expense deduction awarded in the district court. What we have concluded above would equally apply to this additional residuary bequest.

Affirmed.