Else **KAPLUN**, as Executrix of the Estate of Agnes S. Kaplun, Deceased, Plaintiff-Appellee,

v.

**UNITED STATES** of America, Defendant-Appellant.

No. 290, Docket 34440.

United States Court of Appeals, Second Circuit.

Argued Dec. 8, 1970.

Decided Jan. 13, 1971.

Martin Novack, New York City (Robert E. Richter, New York City, of counsel; Levey, Myers, Katz & Goodman, New York City, on the brief), for plaintiff-appellee.

Milton Sherman, Asst. U. S. Atty., Southern District of New York (Whitney North Seymour, Jr., U. S. Atty., Southern District of New York, Michael I. Saltzman, Asst. U. S. Atty., New York City, on the brief), for defendant-appellant.

Before LUMBARD, Chief Judge, FEINBERG, Circuit Judge, and CLARIE, District Judge.*

CLARIE, District Judge:

The appellee-executrix prevailed in the District Court on her motion for summary judgment and was granted judgment entitling the decedent's estate to a refund of federal estate taxes in the amount of $22,337.89, plus interest. The Government has appealed said judgment and contends that the estate taxes originally assessed were lawfully computed pursuant to § 2055(a) of the Internal Revenue Code of 1954, by disallowing a charitable deduction arising out of the decedent's bequest of her coin collection to the State of Israel on the condition that it be displayed there in a museum in perpetuity.

The facts are not in dispute. The decedent died testate on September 1, 1962, and her Will was admitted to probate in the Surrogate's Court for New York County, State of New York, where letters testamentary were issued to the appellee-executrix on December 13, 1962. The Court found that the testatrix's bequest did constitute a charitable trust and thus qualified as an allowable deduction in the computation of the New York State's taxes, under § 249–a of the Tax Law of the State of New York, McKinney's Consol.Laws, c. 60. See, Estate of Agnes S. Kaplun (Sur.Ct.N.Y. County, Apr. 6, 1965), in 153 N.Y.L.J. No. 165, at 16.

The controversial paragraph "Second" of the decedent's Will provided in part as follows:

"Second: I hereby give, devise and bequeath the entire collection of gold and platinum coins left me by my late beloved husband, to the State of Israel, upon condition that the same be kept and exhibited in the State of Israel, in an appropriate museum, that the same be marked and identified to the viewing public as 'The Collection of Dr. Aron A. Kaplun' and that the

---

* Of the District Court of Connecticut, sitting by designation.

State of Israel will undertake to keep said collection in perpetuity, never to be sold or otherwise disposed of * * *."

When the estate tax return was filed on November 27, 1964, it reflected a deduction of $67,954.00, claimed under § 2055 of the Internal Revenue Code of 1954, which allowed charitable deductions for those bequests which met conditions of certain defined categories. This deduction was disallowed by the Internal Revenue Service and the deficiency assessment of $15,484.11, including interest, was paid. The taxpayer now seeks reimbursement of said tax with interest.

The issue of whether the estate should be allowed a charitable deduction turns on the language of § 2055(a) which provides in part:

"§ 2055. *(a) In general*—For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate the amount of all bequests * * *

"(1) to or for the use of the United States, any State, Territory, any political subdivision thereof, or the District of Columbia, for exclusively public purposes;

"(2) *to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes,* including the encouragement of art and the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private stockholder or individual and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation;

"(3) to a trustee or trustees, or a fraternal society, order, or association operating under the lodge system, but only if such contributions or gifts are to be used by such trustee or trustees, or by such fraternal society, order, or association, exclusively for religious, charitable, scientific, literary, or edu-

cational purposes, or for the prevention of cruelty to children or animals, and no substantial part of the activities of such trustee or trustees, or of such fraternal society, order, or association, is carrying on propaganda, or otherwise attempting, to influence legislation; or

"(4) to or for the use of any veterans' organization incorporated by Act of Congress, or of its departments or local chapters or posts, no part of the net earnings of which inures to the benefit of any private shareholder or individual."

Obviously, the State of Israel is not a domestic governmental body, as defined under § 2055(a) (1) of the Code; neither is it a corporation organized and operating exclusively for charitable purposes as described in § 2055(a) (2); nor is it a veterans' organization as defined in § 2055(a) (4). Thus, the claimed deduction must stand under subsection (a) (3) or not at all. See, New Colonial Ice Co. v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348 (1934). The Government's position is that there are only four categories of qualified donees under the statute and since subsection (a) (1) specifically limits bequests entitled to taxable deduction to *domestic governmental bodies* for exclusively public purposes, foreign governmental bodies must therefore be excluded throughout all of the subsections of § 2055(a) under the canon of construction, *inclusio unius est exclusio alterius.*

The Government cites in support of its position, Edwards v. Phillips, 373 F. 2d 616 (10th Cir.), cert. denied, 389 U.S. 834, 88 S.Ct. 38, 19 L.Ed.2d 94 (1967). There the decedent bequeathed funds to a Danish school district "to be used by said school district in any manner it may wish for the betterment of the schools or aid to the students of said district." The Court disallowed a deduction under § 2055(a) using the rationale that:

"(T)he fact that the Danish School district is a political subdivision of a

foreign country is conclusive on the question, and we need not decide whether the district is also a corporation like that designated in subpart (2), or whether the district's officials might be regarded as trustees" (at 619).

Holdings that distinguish the *Edwards* case, however, call into question the Government's position of attempting to apply that ruling to the present facts by emphasizing that each of the subsections of the statute must be considered and applied separately. In an opinion dealing with a predecessor of § 2055, the Second Circuit has had prior occasion to reject the exclusion argument as made by the Government here. In Schoellkopf v. United States, 124 F.2d 982 (2d Cir. 1942), the Court by Judge Learned Hand said:

"(T)he trustee should pay annually $50,000 to one German city and $100,000 to another, both in Wurtemburg, 'for charitable, educational and/or benevolent purposes.' This the defendant challenges because § 23(n) (1) exempts gifts made to municipalities within the United States, and by implication does not exempt any others. That would indeed preclude unrestricted gifts to foreign cities, and is a good answer so far as concerns § 23(n) (1); but § 23(n) (2) creates an exemption without local limitations when the purposes are charitable as there defined. The canon, expressio unius, does not therefore apply, and the gift is exempt unless we must import a general limitation into § 23(n) (2) so that it shall include no charities except those for the benefit of persons within the United States. We do not understand that the defendant so argues, nor is there any warrant for it in the language of the statute; indeed, the contrast between subdivisions one and two strongly suggests the opposite" (at 985).

Other more recent cases have followed the same reasoning as applied to the charitable deduction under § 2055. They point out that subsection (a) (1) is limited to bequests to the United States and its subdivisions exclusively for public purposes while subsection (a) (3) allows a deduction for contributions to trustees for charitable purposes.

The Government's proposed canon of construction approach was also rejected in Continental Ill. Nat'l B. & T. Co. of Chicago v. United States, 403 F.2d 721, 185 Ct.Cl. 642 (1968), cert. denied, 394 U.S. 973, 89 S.Ct. 1456, 22 L.Ed.2d 752 (1969). There a devise was made to "the mayor and magistratsraete of Fuerth, Bayern, Germany 13a to be used and expended for the benefit of said City the Fuerth." The majority of the Court refused to apply the *Edwards* approach to the construction of the statute, while still disallowing the deduction, because the bequest was left to a foreign city outright and not in trust. The opinions of all the judges indicated that the Government's proposed construction of the statute in the present case is not valid. Even though subsection (a) (1) excluded foreign political units from outright bequests for public purposes, this would not exclude bequests to them in trust under subsection (a) (3). The majority and the dissent in *Continental*, both emphasize that Congress logically could have drawn a line between public purposes (which could be advanced only under (a) (1) and the charitable purposes contemplated under (a) (3).

"It seems to us that the word 'public' embodies a broader concept, and envisions gifts to domestic governmental bodies for purposes other than the ordinary philanthropic purposes most people associate with 'charity.' Consequently, it is our opinion that the use of the word 'public' shows a congressional intention to bring within the statutory exemption gifts which could be used for such standard governmental functions as the payment of salaries to policemen and firemen.

We think there is a clear indication that Congress considered that many contributions which would benefit domestic municipalities are not charitable, because the exemption permits different and broader uses of a bequest than those which are exclusively for charitable purposes" (at 724).

With reference to *Schoellkopf*, the majority in *Continental* also declared:

"We think Judge Hand's opinion clearly indicates what we now hold— unrestricted bequests to foreign cities are not deductible under the applicable statute and regulations, whereas contributions and gifts to foreign cities for exclusively charitable purposes are deductible" (at 727).

The most current case in this area follows the reasoning of *Schoellkopf*. Old Colony Trust Co. v. United States, 313 F.Supp. 980 (D.Mass.1970) concerned a charitable deduction claimed on a bequest to a governmentally owned Canadian hospital, which had been denied by the Government on reasoning parallel to this case.

"The Government's argument for the application of *inclusio unius* totally overlooks that the caption of Section 2055 is 'Transfers for Public, Charitable and Religious Uses,' and, more significantly, that the scope of 2055(a) (1) is limited to gifts for exclusively *public* purposes. Section 2055(a) (1) does not undertake to express any congressional intent or ruling with regard to gifts for charitable or religious purposes, as distinguished from gifts for public purposes, whereas it is beyond cavil that Sections 2055(a) (2) and (3) both express congressional mandates with regard to gifts for religious, charitable, scientific, liter-ary or educational purposes. No useful purpose is to be served herein by trying to further clarify a distinction so clearly made by a comparison of the wording of subsections (a) (1) vis-a-vis the wording of subsections (a) (2) and (a) (3). Over and above the lesson to be drawn from the literal reading of this plainly worded statute, there is respectable authority which expressly rejects the Government's contention that the canon of statutory construction, *inclusio unius*, should be applied in the contest of this case" (at 985).

The appellant's construction argument based upon the *Edwards* case must therefore be rejected.[1] Upon a showing that there is a bequest to any qualified trustee for a charitable purpose, subsection (a) (3) will apply to allow the deduction. Only when an outright gift is bequeathed directly to a foreign government for a recognized general public purpose will the deduction be disallowed under subsection (a) (1).

The Government argues further that this construction must be affected by the provisions of (a) (3) that require the trustee to make specific charitable uses of his fund and not to engage in propaganda or the influencing of legislation. The Government's view is that there can be no proper isolation of the political activities of this foreign country from the trust obligations. Indeed, the Government in oral argument conceded that the present bequest would have met the standards set by the statute, if the coin collection had been bequeathed to a trustee bank for the same purpose. The Government unduly emphasizes the nature of the trustee, as distinguished from the accomplishment of the trust's objectives.

1. The facts as stated in the *Edwards* opinion are dissimilar to those in this case. The bequest there was to a Danish school district, noted by the *Edwards* Court to be a political subdivision of Denmark. There-fore the denial of the deduction is justifiable on the reasoning of *Continental*, namely that this is an outright gift to a foreign government for a public purpose and excludable under section (a) (1).

While the State of Israel in its non-trustee role could engage in acts prohibited under § 2055(a) (3), there is no indication whatsoever that in agreeing to accept and perform the conditions of the trust itself, that there would be any likelihood it would deviate from its pledged responsibilities. As the trial court correctly noted, the identity of the trustee is not crucial, rather the important and controlling issue relates to the duties imposed upon the trustee and its execution of them.

The Government's final argument relates essentially to public policy. It is said that such a construction as urged by the appellee might in some cases extend favors to Nations unfriendly to the United States. One answer to this is that the only real effect of the deduction is to decrease the taxes on the United States' testator. There is nothing in the present estate tax statute to prohibit a bequest from being transferred to a foreign country. Cf. Conn. Gen.Stat. § 45–278 (Supp.1970); N.Y. Surrogate's Court Procedure Act § 2218 (McKinney Supp.1970). ("Iron Curtain" statutes.) Such claims have been rejected in the case on which the Government so heavily relies as a precedent, Edwards v. Phillips, *supra*; where the Court states that it had been referred to no authority announcing this policy (373 F.2d at 619). It is true that denial of a tax benefit might discourage a testator from leaving a bequest to an unfriendly foreign country. But this speculative factual situation does not cry out for the reshaping of the wording of the statute which is in controversy. The remedy of the Government to obtain the objectives sought in its brief lies with Congress and not with this Court.

The appellee's claim qualifies for a deduction under § 2055(a) (3). The trustee has been recognized, appointed and duly qualified under New York State law to perform the duties assigned to it under this charitable trust. The judgment of the District Court is affirmed.