IN MATTER OF ESTATE OF FRAUTSCHY, Deceased: STATE, Appellant, v. FIRST NATIONAL BANK OF MONROE, Personal Representative, Respondent.

*No. 76–081. Argued June 5, 1978.—Decided June 30, 1978.*
(Also reported in 267 N.W.2d 300.)

For the appellant the cause was argued by *John J. Glinski*, assistant attorney general, with whom on the brief was *Bronson C. La Follette*, attorney general.

For the respondent there was a brief by *Rudolph F. Regez, Callahan & Knoke* of Monroe, and oral argument by *Rudolph F. Regez*.

DAY, J.   This is an appeal from two probate court orders determining the Wisconsin inheritance taxes in the estate of Bertie M. Frautschy. The estate's personal representative since March 14, 1976 has been the respondent, First National Bank of Monroe (hereafter personal representative).[1] The probate court determined that a bequest in the deceased's will, establishing the "John Cowles Frautschy Scholarship Fund," was exempt from taxation as a charitable trust. The appellant, Wisconsin State Department of Revenue (department) contends that the trust was not exempt.

The question is whether the bequest of funds for a schorlarship trust for needy post-high school students is exempt from inheritance taxation under sec. 72.15 (1),

---

[1] The First National Bank of Monroe is also trustee of the scholarship trust.

Stats. 1973,[2] where the scholarships are available to male Protestant Monroe high school graduates and certain relatives of the deceased.

On December 7, 1974, Bertie M. Frautschy died testate, leaving a net estate of $146,465.35 before taxes. Article XII of her will provided that the residue of the estate would be held in trust for the establishment of the "John Cowles Frautschy Scholarship Fund." John Cowles Frautschy was Mrs. Frautschy's son who died at age ten. As of May 11, 1976 the income from the fund was $6,300.00 per year.

The pertinent portions of the will establishing the scholarship are as follows:

"XII. All of the rest, residue and remainder of my estate, of every kind and nature, wheresoever situated, I give, devise and bequeath to my trustee hereinafter named for the purpose hereinafter set forth:
"Said trustee shall hold, invest and administer the trust fund in accordance with the provisions of this my Last Will and Testament, and for the purpose of establishing a scholarship fund to be known as the JOHN COWLES FRAUTSCHY SCHOLARSHIP FUND.
"The income from said fund shall annually be paid to a deserving male graduate or male graduates of Mon-

---

[2] Sec. 72.15(1)(a), (2) and (4), Stats. 1973.

"Transfers exempted from this tax; reciprocity in exemptions. (1)(a) All transfers to the following are exempt from the tax imposed by this subchapter:
". . .
"(2) Corporations or voluntary associations organized under the laws of this state, solely for religious, humane, charitable, scientific or educational purposes;
". . .
"(4) Banks or trust companies of this state, or to individuals residing in this state, or to fraternal societies organized under ch. 188, as trustees, in trust exclusively for the purposes specified in subds. 1 and 2 in this state; . . ."

These provisions appear in the 1975 Statutes as sec. 72.15(1)(a), (2) and (5). Minor changes appearing in the 1975 Statutes are irrelevant to the issue presented here.

roe High School, Monroe, Wisconsin except as otherwise noted herein. . . .

"I specifically restrict the awarding of this scholarship to male Protestant graduates of Monroe High School, except as otherwise stated herein.

"In making their selection, <u>I direct that they shall consider need as paramount and that scholastic excellence shall not necessarily be a factor.</u> I make this provision for the reason that many times students who do not attain scholastic honors in High School are capable of doing excellent University work. . . .

"In the event the children of <u>NATHAN FRAUTSCHY, STANLEY THOMAS and WILLIAM EPLING show interest in a college education, and if in the judgment of the committee are deserving, it is my hope that the committee will give them favorable consideration in making the award of scholarship hereunder, provided that they may do so consistent with the terms hereof. The requirement of being a graduate of Monroe High School shall not apply to such children. Except for the children of the persons named, the awards shall be confined to male graduates of Monroe High School at Monroe, Wisconsin.</u>" (Emphasis supplied.)

The people mentioned for special scholarship consideration were all related by blood or marriage to the testatrix. Nathan Frautschy was the nephew of Chester D. Frautschy, the husband of the testatrix, who predeceased her. William Epling is a grand-nephew of the testatrix. Stanley Thomas is the husband of the testatrix's great grand-niece.

On the basis of the underlined clause the department disallowed the scholarship trust as a charitable gift.[3]

The probate court found that the language underlined above in the will that,

---

[3] The estate also claimed that the scholarship fund was a charitable trust on their federal estate tax returns. The deduction was allowed by the Internal Revenue Service. Federal Estate and Gift Tax Reporter ¶12,094. C.C.H. (1978).

". . . it is my hope that the committee will give them [the relatives] favorable consideration in making the award of scholarship hereunder . . ."

was precatory and of no effect. The department agrees that this language was precatory.

On June 3, 1976 the trial court determined that the trust was charitable and ordered the department to refund $18,747.85 in inheritance taxes to the estate.

On June 7, 1976 the department moved for rehearing on the inheritance tax determination, claiming that the scholarship trust was not exempt because part of the money from the trust had been awarded to someone who was going to attend an out-of-state college. This latter argument is not raised on this appeal.

On July 13, 1976 the probate court reaffirmed its previous decision. The department appeals from the June 3, 1976 and July 13, 1976 orders.

Sec. 72.11(1) (a), Stats. 1973 provides for an inheritance tax on the transfer of property to any distributee[4] from a person who dies while a resident of this state, unless the property is exempted by another section of the statutes. Sec. 72.15(1) (a)2, Stats. 1973 exempts tranfers to ". . . voluntary associations organized . . . solely for religious, humane, charitable, scientific or educational purposes . . ."

A determination of whether the transfer to the trust is exempt hinges on statutory construction.

". . . tax exemptions . . . are matters of legislative grace; . . . taxation is the rule and exemption the exception . . ." *Estate of Thomas*, 1 Wis.2d 402, 405, 84 N.W.2d 68 (1957).

Even where the exemption is for a charitable purpose, the clear and unambiguous language of the statute must

---

[4] A "Distributee' is any person to whom property is transferred by reason of a death or in contemplation of death other than in payment of a claim." Sec. 72.01(9), Stats. 1973.

control. The court can not resort to an implied exemption. *Estate of Price,* 192 Wis. 580, 584, 585, 213 N.W. 477 (1927). The courts look with favor upon charitable bequests and the statute exempting such bequests should be construed to favor exemption. *Estate of Johnston,* 186 Wis. 599, 601, 602, 203 N.W. 376, 377 (1925).

Both parties to this appeal rely on *Will of Chafin,* 210 Wis. 675, 247 N.W. 325 (1933). In that case John Chafin died testate and part of his will provided that $72,692.13 of his estate should be put in trust for the establishment of the "Chafin Farm Home." The trust provided that the farm home was to be ". . . a home for poor neglected boys in which to educate them and teach them farming and other useful . . . occupations . . ." *Chafin* at 210 Wis. 676.

The bequest for the establishment of the home was conditioned on the name of the farm never being changed and on the further requirement that certain named persons be allowed to reside at the home. If Chafin's nephews, nieces or sisters-in-law were in need, the trustees of the farm were to either provide for their support or put them in the farm home temporarily or permanently. Anytime Chafin's brother-in-law, David Shultis, wanted to stay at the farm home he could do so as long as he obeyed the rules of the home.

Miss May B. Senger, who was not a relative of Chafin's, could go to the home for a vacation or become a temporary or permanent resident of the farm home. Even if May Senger was not a resident of the farm home she had the right, under the will, to receive periodic payments from the farm home's endowment fund.

If any of the above conditions of the will were not complied with, the farm home trust would be void and the trust funds would revert to Chafin's heirs.

*Chafin* is readily distinguishable from the case at bar for at least two reasons. First, in *Chafin* the trustees were required to house Miss Senger and Mr. Shultis at

the farm home and to make periodic payments to Miss Senger. If the trustees did not comply with these requirements, the trust became void. Second, Shultis and Senger had a right to the housing and payments regardless of need. The *Chafin* trust was instituted, at least partly, for private purposes. The private purposes were shown by the benefits that were required to be given to relatives and non-relatives alike, regardless of need.

In a number of federal cases relatives benefited from a will or inter vivos instrument creating a charitable, educational or religious trust. In each of these cases, the testator or settlor asked or required that relatives be considered or given a preference, but generally the trust funds were still held to be deductible.[5]

In *Schoellkopf v. United States*, 124 F.2d 982 (2nd Cir. 1942) the trust instrument listed one of its objects as "The care of needy men, women and children" *Schoellkopf* at 124 F.2d 985. The trust allowed, but did not require that worthy descendants of the settlor's father be included as beneficiaries. The trust did not even give the descendants a preference in receiving benefits. The court stated that the possible benefits to relatives did not prevent the trust from being charitable under 26 U.S.C. §23(n)(2), Revenue Act of 1928.[6]

---

[5] These cases are collected at Annot. 69 A.L.R.2d 871 (1960).

[6] 26 U.S.C. §23(n)(2), Revenue Act of 1928 provided that charitable gifts or contributions could be deducted from gross income when given to,

". . . (2) any corporation, or trust, or community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual; . . ." (Emphasis supplied.)

The federal statutory language construed in all the cases cited herein was nearly identical to the language underlined above. The federal statutes presently applicable are 26 U.S.C.A. 170(c)(2)(c) and 26 U.S.C.A. 2055(a)(2).

In *Estate of Agnes C. Robinson,* 1 T.C. 19 (1942), the will created a trust for the benefit of needy persons. The trustee had absolute discretion in the choice of beneficiaries, but the will expressed the wish that friends and relatives of the testatrix be given preference. In administering the trust, the trustees made payments to seven cousins of the testatrix and seven unrelated persons. The payments to relatives totalled $2,190.00 to relatives and $2,160.00 to non-relatives. The tax court held that the bequest for the trust was charitable despite the fact that relatives were beneficaries and given a preference. In reaching this decision, the court noted that the purpose of the trust was charitable and that the relatives receiving benefits had to be in impecunious circumstances. *Robinson* at 1 T.C. 23, 24.

In *Estate of Waller,* 39 T.C. 665 (1963), the trustees were authorized, in their uncontrolled discretion, to make distributions to anyone who was in need of financial aid, or to any young person who needed financial aid to attend a school or college. The trustees were instructed to give preference to relatives, former employes and children of employes of the donors to the trust. Relying on language in the trust instrument stating its purpose, the court held that the trust was exclusively for charitable or educational purposes. *Waller* at 39 T.C. 673, 674.

In *Estate of Sells,* 10 T.C. 692, 699, 701 (1948), funds for a trust created by a holographic will were held to be deductible from the gross estate because of their religious and educational purposes. The trust provided for a $200.00 annual payment to a church and for other income to be given for scholarships, with nieces and nephews of the testatrix getting preference for the scholarship funds. The trustees followed the instructions in the trust, and during the first two years of trust administration paid $2,500.00 of $2,900.00 of trust bene-

fits to the nieces and nephews. Despite this fact, the court reasoned that the trust was to be in perpetuity and that with time an increasingly large share of the scholarship funds would go to non-relatives. The court held that under these circumstances the trust only expressed a preference for relatives and that the bequest was deductible from the gross estate. *Sells* at 10 T.C. 701.

In other cases charitable deductions have been denied for expenditures used to establish inter vivos trusts from which relatives could benefit. In *Amy Hutchinson Crellin v. C. I. R.*, 46 B.T.A. 1152 (1942), a trust was set up primarily to educate relatives of the deceased. In *James Sprunt Benev. Trust. v. Comm.*, 20 B.T.A. 19 (1930), the trust instrument recited that a primary purpose was to pay full or partial support "on liberal lines" to any direct descendant of the settlor's parents who would serve as a minister in the Southern Presbyterian Church.

We discuss these federal cases, but do not find all of them persuasive in interpreting the Wisconsin statute at issue here. We find the tax court cases persuasive only for the general proposition that a testamentary or inter vivos trust is not necessarily less charitable because relatives of the settlor may become beneficiaries of the trust. Relatives may be beneficiaries and the trust will still be charitable or educational so long as: (1) The trustees are not required to pay benefits to relatives, and; (2) The relatives may only benefit from the trust on the same basis of need as non-relatives. *Schoellkopf* at 124 F.2d 985.

In this case the trustees are not required to give scholarships to relatives of the testatrix. The parties agree that the language in the will concerning the relatives is only precatory. Even if relatives of the deceased

are given scholarships they must meet the same need requirements as other scholarship applicants.

The testamentary trust in this case opened the class of potential beneficiaries to include relatives as well as male graduates of Monroe high school, but the relatives must still meet the same need requirements to get scholarships. It was brought out at oral argument that as a practical matter there were very few relatives who were even possible beneficiaries of the trust.[7] Nothing in the trust or the record indicates that this trust was set up for other than bona fide charitable and educational purposes.

*By the Court.*—Orders affirmed.

---

[7] Counsel for the personal representative argues that only one of the deceased's relatives who were mentioned in the will could benefit from the trust. The rest of the relatives now have families or have completed their education. However, nothing in the trust precludes the granting of scholarships for post-graduate or adult education. Nevertheless, the chances of the deceased's relatives ever receiving a significant portion of the scholarship funds appear to be minimal.